**Paul Tommy OJEDA, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 966–82.

Court of Criminal Appeals of Texas, En Banc.

July 2, 1986.

Allen C. Isbell (on appeal only), Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and James C. Brough and George Lambright, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

W.C. DAVIS, Judge.

Appellant was convicted of murder and sentenced to twenty years' incarceration in the Texas Department of Corrections.

On direct appeal appellant argued that the trial court erred in refusing to include a paragraph on voluntary manslaughter in the court's charge to the jury. The Texarkana Court of Appeals, in an unpublished opinion, held that the trial court was correct in refusing to include appellant's requested charge because the evidence did not raise the issue of voluntary manslaughter. We granted appellant's petition for discretionary review to determine whether a paragraph on voluntary manslaughter should have been included in the jury charge.

On April 22, 1979, Bobby Lee Nentwig, the deceased, and his wife were ambushed by a group of approximately fifteen people in the parking lot of The Summit in Houston. Nentwig removed his belt and swung it about his head in order to ward off his attackers. However, Nentwig was then subdued and appellant stabbed him in the back and neck nine times, resulting in Nentwig's death.

Appellant's girlfriend, Doris Rodriguez, testified that she and appellant were trying to avoid the conflict when they were struck by Nentwig's belt.[1] It was after being struck that appellant joined the fight. Ap-

---

1. Doris Rodriguez testified as follows:
   Q. You ran past the fight? You didn't turn around and go back in the other direction you had just come in?
   A. No, I couldn't go back.
   Q. Why not?
   A. Because Bobby (the deceased) ran after me with his belt.
   Q. Bobby was in front of you, wasn't he?
   A. No. He was beside me.

   Q. How did he get beside you?
   A. You see, they were coming from across the street, and we were going towards the front. And then, those guys had jumped him, and well, you see, he took his belt off, and he hit Paul. And that's when, you know, well, I ran across the street where that girl was. And then, you know, he was after me with the belt, and—

pellant's sister, Nora Linda Guerra, corroborated this testimony.

Appellant argues that the testimony of his girlfriend and sister raised the issue of voluntary manslaughter. Therefore, the trial court erred in failing to include an instruction pertaining to voluntary manslaughter in the charge to the jury.

■ It is well established that if evidence from any source raises the issue of a lesser included offense or a defensive theory, it must be included in the court's charge. *Bell v. State,* 693 S.W.2d 434 (Tex.Cr.App.1985). As this Court said in *Moore v. State,* 574 S.W.2d 122, 124 (Tex. Cr.App.1978):

> The credibility of evidence and whether it is controverted or conflicts with other evidence in the case may not be considered in determining whether a defensive charge or an instruction on a lesser included offense should be given. When evidence from any source raises a defensive issue or raises an issue that a lesser included offense may have been committed ... the issue must be submitted to the jury. It is then the jury's duty, under the proper instructions, to determine whether the evidence is credible and supports the defense or the lesser included offense.

Voluntary manslaughter is described at V.T.C.A., Penal Code Sec. 19.04(a) as causing "the death of an individual under circumstances that would constitute murder ..." except the death is caused "under the immediate influence of sudden passion arising from an adequate cause." "Sudden passion" is defined as "passion directly caused by and arising out of provocation by the individual killed ..." V.T.C.A., Penal Code Sec. 19.04(b). "Adequate cause" is defined as "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." V.T.C.A., Penal Code Sec. 19.04(c).

■ Thus, a charge on voluntary manslaughter should only be given when there is evidence that the defendant acted under the "immediate influence of sudden passion arising from adequate cause." *Hobson v. State,* 644 S.W.2d 473, 478 (Tex.Cr.App. 1983); *Cerda v. State,* 557 S.W.2d 954 (Tex. Cr.App.1977).

■ There is evidence that appellant and his girlfriend were struck by the deceased, after which appellant joined the fight. Appellant points to this evidence as raising the issue of voluntary manslaughter, although there was no direct evidence specifically showing that appellant was acting under sudden passion. There is no evidence as to appellant's apparent frame of mind, ie., angry, scared, etc, at the time of the incident. Sudden passion is a subjective concept, although sometimes outwardly manifested. What sparks sudden passion in some may not in others. The evidence in the instant case only presents an objective recitation of acts—appellant was hit and he responded. Whether he was cool and collected in defending himself, or enraged at being hit and seeing his girlfriend hit is not shown. Without evidence that appellant acted under the influence of sudden passion we simply cannot agree that the issue of voluntary manslaughter was raised. Therefore, it was not error for the trial court to refuse appellant's request for a charging paragraph on voluntary manslaughter.

Appellant also argues that the indictment in the instant case is fundamentally defective. This argument was not presented at trial or on direct appeal, however, as appellant is alleging fundamental error we will address it here.

The second paragraph of the indictment charges appellant with murder under V.T. C.A., Penal Code Sec. 19.02(a)(2):

> [T]he Defendant ... did then and there unlawfully intend to cause serious bodily injury to BOBBY LEE NENTWIG, ..., and did cause the death of Complainant by committing an act clearly dangerous to human life, namely, stabbing him with a knife.

■ Appellant argues that this indictment is fundamentally defective in that an additional intent element is required for the "act clearly dangerous to human life." This issue has been decided adversely to appellant in *Lugo-Lugo v. State*, 650 S.W.2d 72 (Tex.Cr.App.1983).

Accordingly, the judgments of the Court of Appeals and trial court are affirmed.

ONION, P.J., not participating.

CLINTON, Judge, dissenting.

In this cause the majority practically states what was implied in *Gonzales v. State* (Tex.Cr.App., No. 1148–84, delivered this day), *viz.*, that in order for it to be said that the evidence raises voluntary manslaughter there must now be "direct evidence specifically showing that appellant was acting under sudden passion." Slip op. at p. 4. For reasons elaborated in my dissenting opinion in *Gonzales*, I strenuously dissent to this unconscionable usurpation of the jury's prerogative.

ONION, P.J., not participating.

TEAGUE, J., joins.