Frank MOORE, Appellant,

v.

The STATE of Texas.

No. 72543.

Court of Criminal Appeals of Texas, En Banc.

June 10, 1998.

Vincent D. Callahan, San Antonio, for appellant.

Angela Moore, Assistant District Attorney, San Antonio, Matthew Paul, State's Attorney, Austin, for the State.

## OPINION

WOMACK, Judge, delivered the opinion of the Court in which BAIRD, MANSFIELD, PRICE and HOLLAND, Judges, joined.

The appellant was convicted of the capital murder of Samuel Boyd and sentenced to death. This appeal followed. We shall sustain the appellant's seventh and eighth points of error, that the trial court erred in denying his requests for charges authorizing the jury to convict him of the lesser included offenses of voluntary manslaughter and murder, respectively.

### Evidence

The evidence presented at trial showed that the appellant shot and killed two individuals after an altercation in the parking lot of the Wheels of Joy Club around 2:00 a.m. on January 21, 1994. The persons killed were Samuel Boyd, 23 years old, and Patrick Clark, 15 years old. The first peace officer on the scene found Boyd dead or dying in the passenger seat of an automobile and Clark lying dead next to the driver's door. An investigator found shell casings in a location that suggested that the shots were fired from the left rear of the vehicle. This evidence comported with the deputy medical examiner's testimony that the tracks of the bullet wounds were generally from back to front, and left to right. Boyd had been wounded by six bullets, and Clark by five. Boyd's blood contained 0.28 grams per deciliter of ethanol alcohol. Clark's blood contained 0.15 grams per deciliter of ethanol, as well as 0.25 milligrams per liter of diazepam, and 0.33 milligrams per liter of nordiazepam. The latter two controlled substances are muscle relaxants. Both victims were acutely intoxicated at the times of their deaths, in the opinion of the medical expert.

The State and the appellant each called one eyewitness. The State called Angela Wallace, who lived in another city and who had not previously known anyone who was involved in the offense. She testified that she had gone to the Wheels of Joy Club with her friend, who was Boyd's girlfriend. During the several hours she spent in the nightclub, Wallace saw the appellant shake hands with Boyd, and watched the two speak and laugh. She also saw Clark in the club, but did not see him have any contact with the appellant. Wallace testified that she did not see Boyd or Clark acting drunk or argumentative. As the club prepared to close, the appellant asked Wallace to save him the last dance and to give him her telephone number. The appellant was interrupted when a man stopped and whispered to him; the two men then left the club. Wallace identified this other man from photographs as Ivory Sheffield.

When the club closed, Wallace left and went to the parking lot. She testified that the appellant, Boyd, Clark, and another man, "had a confrontation...[an] exchange of words and someone pushed somebody.... It just broke up. Just everybody started scattering a little bit."

Wallace saw Clark's car come into the parking lot and stop. She stated that the car did not come close to striking the appellant, and it did not back up. While Boyd must have at some point gotten into Clark's car, Wallace did not see him do it. Wallace testified that she saw the appellant walk towards the back of Clark's car. Sheffield got a rifle from the trunk of a Cadillac and tossed it to the appellant, who started shooting into Clark's car. Then the appellant gave the gun back to Sheffield and left in the Cadillac. Sheffield said, "Who else wants some of this?" and walked around with the gun. Fearing for her safety, Wallace left the crime scene.

The appellant called the other eyewitness, his half-brother, Tyron Parks, who gave a different version of the confrontation. Parks testified that he was at the Wheels of Joy Club on the night of the homicide. He saw Clark driving his car up and down the street, "burning rubber...acting crazy." Once in-

side the club, Parks saw Boyd and Clark "bumping into people, dancing crazy," and that they appeared to be intoxicated. Boyd and Clark left the club after being told they had to calm down or leave.

When Parks went outside for some fresh air, he saw Boyd and a man called Braskin arguing with a girl. The argument became an assault; Braskin hit the girl, and Boyd put out a cigarette on her face. Parks intervened and said to the two men, "That's uncalled for." Boyd responded with an obscenity and tried to grab Parks, while Braskin looked as though he was reaching for a pistol. Parks hid behind a Cadillac, and then ran towards the door of the Club just as the appellant and Robert Maze, Parks' cousin, were coming out.

Parks testified that the two groups of men—Parks, Maze and the appellant in one group, Boyd and Braskin in the other—confronted each other in the parking lot. The appellant said, "Where's the problem?" Boyd pushed the appellant. The appellant said, "That's uncalled for." Boyd next pushed Maze, and then grabbed for Parks, saying, "You're the one I want." Parks grabbed Boyd's shirt and considered cutting his throat, but he decided not to and threw Boyd to the ground.

In the meantime, Clark was in his automobile on the street, "revving" the motor. Boyd ran and jumped into the car. Clark sped into the parking lot and tried to run over the appellant and Parks. Parks testified, "[H]e was peeling rubber. I had to get out of the way, other than that he would have squished me between the car—me and my brother." Parks pushed the appellant out of the way of the car, and then jumped to the side to avoid being struck. Clark backed up the car and again tried to hit the appellant, who jumped out of the way.

Somebody in the crowd threw the appellant a rifle. Then someone yelled, "They've got a gun," at which point the appellant turned around and shot Boyd and Clark. Parks said on direct examination that Clark was shot in the car; on cross-examination he said that Clark had gotten out of the car

before he was shot. After the shooting, the appellant left.

## Lesser Included Offenses

Whether an offense is a lesser included offense is determined by application of Article 37.09 of the Code of Criminal Procedure, which reads:

An offense is a lesser included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

■ This court has implemented a two-step test to determine when a charge on a lesser included offense should be given. *See Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Cr.App.1985); *Royster v. State*, 622 S.W.2d 442, 444 (Tex.Cr.App.1981) (plurality opinion). The first step is to decide whether the offense comes within Article 37.09. We usually say at this step that "the lesser included offense must be included within the proof necessary to establish the offense charged." *See, e.g., Rousseau v. State*, 855 S.W.2d 666, 672 (Tex.Cr.App.1993); *Aguilar v. State*, 682 S.W.2d at 558; *Royster v. State*, 622 S.W.2d at 444. This statement of the rule is a paraphrase of the language of Article 37.09(1), which describes the kind of lesser included offense most frequently encountered. Of course, another definition of lesser included offense in Subdivisions (2), (3), or (4) of Article 37.09 may apply as well in the first step of a given case. *See Schweinle v. State*, 915 S.W.2d 17, 18 (Tex.Cr.App.1996). The first step is to apply the relevant definition to the offense charged and the offense in question.

■ The second step of the *Aguilar /Royster* test requires an evaluation of the evidence to determine whether there is some evidence that would permit a rational jury to find that the defendant is guilty only of the lesser offense. *Schweinle v. State*, 915 S.W.2d at 18; *Rousseau v. State*, 855 S.W.2d at 672; *Aguilar v. State*, 682 S.W.2d at 558; *Royster v. State*, 622 S.W.2d at 444; *McBrayer v. State*, 504 S.W.2d 445, 447 (Tex. Cr.App.1974); *Daywood v. State*, 157 Tex.Cr. 266, 267–69, 248 S.W.2d 479, 481 (1952). The evidence must be evaluated in the context of the entire record. *Ramos v. State*, 865 S.W.2d 463 (Tex.Cr.App.1993). There must be some evidence from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser included offense. *See Bignall v. State*, 887 S.W.2d 21, 23 (Tex.Cr.App.1994). The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence. *Havard v. State*, 800 S.W.2d 195, 216 (Tex.Cr.App.1989). Any evidence that the defendant is guilty only of the lesser included offense is sufficient to entitle the defendant to a jury charge on the lesser included offense. *See Bignall v. State*, 887 S.W.2d at 23.

## Voluntary Manslaughter

In his seventh point of error, the appellant contends that the trial court erred when it refused to instruct the jury on the lesser included offense of voluntary manslaughter.[1]

---

1. At the time of the offense, January 21, 1994, voluntary manslaughter was defined by Penal Code § 19.04:

(a) A person commits an offense if he causes the death of an individual under circumstances that would constitute murder under Section 19.02 of this code, except that he caused the death under the immediate influence of sudden passion arising from an adequate cause.

(b) "Sudden passion" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.

(c) "Adequate cause" means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.

■ The first step is to decide whether voluntary manslaughter is a lesser included offense of capital murder. We have held that it is, because it is a lesser included offense of murder, which in turn is a lesser included offense of capital murder. *Havard v. State*, 800 S.W.2d at 216. That voluntary manslaughter is a lesser included offense of murder is well settled, but the reason why is not so clear.

This Court first applied the definition of lesser included offense in Code of Criminal Procedure Article 37.09(1). We said that sudden passion was in the nature of a defense that reduces voluntary manslaughter to a lesser included offense of murder, and that sufficient evidence of murder was, as a matter of law, sufficient evidence of voluntary manslaughter. *Braudrick v. State*, 572 S.W.2d 709 (Tex.Cr.App.1978).

Rethinking the analysis but still applying Article 37.09(1), a plurality of this Court said in *Bradley v. State*, 688 S.W.2d 847 (Tex.Cr.App.1985), that murder had an unwritten, implied element of lack of sudden passion, on which the jury did not have to be charged unless evidence raised the issue. The State had the burden to disprove sudden passion beyond a reasonable doubt to convict for murder, and the burden to prove the existence of sudden passion beyond a reasonable doubt to convict for voluntary manslaughter. The Court ordered Bradley acquitted because the proof was sufficient to have proved murder, but there was no evidence of sudden passion to sustain his conviction of voluntary manslaughter.

We turned away from Article 37.09(1) in our third effort, *Johnson v. State*, 815 S.W.2d 707 (Tex.Cr.App.1991). We said, "The *Bradley* manipulation of the murder statute (and the consequential shifting of the burden of proof) was unnecessary. Manslaughter could qualify as a lesser included offense of murder under Section (3) of Article 37.09, V.A.C.C.P., which permits an offense to be charged as a lesser include offense if 'it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission.'" *Id.* at 710 n. 3. "These two separate offenses [murder and voluntary manslaughter]...appear to require proof of the same culpable mental state, 'intentional or knowing,' but the addition of 'sudden passion' to Section 19.04 in effect tempers the culpability of the mental state that would otherwise turn an individual's action into murder." *Id.* at 709. The Court stopped short of overruling *Bradley* because "the State has not yet asked us to review" it. *Id.* at 710 n. 3.

In *State v. Lee*, 818 S.W.2d 778 (Tex.Cr.App.1991), the State promptly asked the court to adopt the *Johnson* suggestion that under Article 37.09(3), sudden passion is a less culpable mental state. The Court was unable to resolve the issue, perhaps because the question was unnecessary to the resolution of the appeal. (The judgment of the court of appeals was reversed for a different reason.) An opinion for three judges said the Court could not do as the *Johnson* opinion had suggested. *Id.* at 781–82. As we have said elsewhere, the precedential value of a plurality opinion is limited. *Vargas v. State*, 838 S.W.2d 552, 554 n. 1 (Tex.Cr.App. 1992); *Farris v. State*, 819 S.W.2d 490, 501 n. 3 (Tex.Cr.App.1990). The opinion in *Lee* was not even that of a plurality; the plurality of the Court joined the judgment of the Court without joining any opinion.

Although the legislature has acted on the issue for offenses committed on or after September 1, 1994,[2] the problem lingers for homicides committed before that date, as this case demonstrates. The question should be resolved. We hold that voluntary manslaughter is a lesser included offense of murder under Code of Criminal Procedure Article 37.09(3), for the reasons stated in *Johnson v. State*, 815 S.W.2d 707 (Tex.Cr.

---

(d) An offense under this section is a felony of the second degree.

This version of Section 19.04 was repealed by Acts 1993, 73rd Leg., R.S., ch. 900, § 1.01. The repeal was effective September 1, 1994. *Id.*, § 1.19(a). The former law was continued for offenses committed before the effective date.

*Id.*, § 1.18(b). For offenses committed on or after September 1, 1994, the Act made sudden passion an issue to be considered at the punishment stage of a murder trial. *Id.*, § 1.01. See Tex. Pen.Code § 19.02(d).

**2.** See n. 1, *supra*.

App.1991). The holding of the plurality opinion in *Bradley v. State*, 688 S.W.2d 847 (Tex.Cr.App.1985), is overruled; the statements in Part III of the minority opinion in *State v. Lee*, 818 S.W.2d at 781–82, are disapproved.

The second step of the test for lesser included offenses in the present case requires that we determine whether there was evidence that if the defendant was guilty, he was guilty only of the lesser included offense of voluntary manslaughter. In terms of the penal statute, was there evidence from which a jury could find that the defendant "cause[d] the death of an individual under circumstances that would constitute murder under Section 19.02 of th[e Penal C]ode, except that he caused the death under the immediate influence of sudden passion arising from an adequate cause," that is, "under the immediate influence of. . .passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion ar[ose] at the time of the offense and [wa]s not solely the result of former provocation," and which arose from a "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection"? [3]

■ A threshold issue in this determination is whether direct evidence of sudden passion is required. In *Ojeda v. State*, 712 S.W.2d 742 (Tex.Cr.App.1986), there was evidence that the deceased had struck the defendant with a belt and "gone after" the deceased's girlfriend with the belt before the defendant killed him. This Court found no error in refusing the defendant's request for a charging paragraph on voluntary manslaughter, because there was no direct evidence that he was acting under the influence of sudden passion. The *Ojeda* Court stated:

There is no evidence as to appellant's apparent frame of mind, i.e., angry, scared, etc, at the time of the incident. Sudden passion is a subjective concept, although sometimes outwardly manifested. What sparks sudden passion in some may not in others. The evidence in the instant case

only presents an objective recitation of acts—appellant was hit and he responded. Whether he was cool and collected in defending himself, or enraged at being hit and seeing his girlfriend hit is not shown. Without evidence that appellant acted under the influence of sudden passion we simply cannot agree that the issue of voluntary manslaughter was raised.

*Id.* at 744.

■ Saying that "sudden passion is a subjective concept" is not a justification for requiring direct evidence; in fact, it is the reason why direct evidence is neither needed nor usually available. As this Court said in *Johnson v. State*, 815 S.W.2d 707 (Tex.Cr. App.1991), and as we reaffirm today, sudden passion is essentially a culpable mental state. Mental states are almost always inferred from acts and words. "Mental culpability is of such a nature that it generally must be inferred from the circumstances under which a prohibited act or omission occurs." *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex.Cr. App.1991). A defendant's mental state "was concealed within his own mind and can only be determined from his words, acts, and conduct." *Norwood v. State*, 135 Tex.Crim. 406, 120 S.W.2d 806, 809 (1938). By implying that some direct evidence of sudden passion, other than the acts and circumstances, was required, the *Ojeda* Court contradicted this well-settled law. Its holding that the acts and circumstances of the offense could not constitute evidence of sudden passion is overruled.

Judge Keller says, "To satisfy the 'guilty only' prong of *Rousseau*, the record must contain evidence as to both parts [of the voluntary manslaughter statute, *i.e.*, sudden passion and adequate cause]. But the majority's holding collapses these two parts into one: under the majority opinion, the defendant need only offer evidence of adequate cause and this Court will automatically hold such evidence sufficient to infer sudden passion." *Post* at 14. She also says that we have "written sudden passion out of the code." *Post* at 15 n. 4.

3. See former Tex. Penal Code § 19.04(a), n. 1,     *supra.*

■ We are not collapsing two parts of the statute into one, or writing an element out of the code, when we recognize that the same evidence can prove more than one element. Evidence which is relevant to proving adequate cause is not used up or limited to that element; it also may be relevant to proving sudden passion. We think that Judge Keller's analysis would divide evidence in a fashion that has not heretofore been done, by allowing it to be either "adequate-cause" evidence or "sudden-passion" evidence, but not allowing it to be both.

*Ojeda v. State,* which Judge Keller would follow, illustrates the fallacy of the position that evidence of adequate cause is no evidence of sudden passion. The deceased, Nentwig, had been involved in a fight in a parking lot. Ojeda's girlfriend testified that she and Ojeda were trying to avoid the conflict when Nentwig struck Ojeda. The girlfriend ran across the street, and Nentwig went after her with his belt and struck her. Ojeda then joined the fight and stabbed Nentwig nine times. This Court statement that there was "no evidence as to appellant's apparent frame of mind" is not correct. Ojeda's stabbing someone nine times after being struck, and seeing his girlfriend struck, was an action from which a reasonable juror could have concluded that he was angry or resentful. There may be a person who is, as the *Ojeda* Court said above, "cool and collected in defending himself" by stabbing some one nine times in the neck and back after being struck and seeing his girlfriend struck, but to say that such evidence is not some proof that the person was other than cool and collected is contrary to common experience and reason. We do not say that a jury would be bound to find the fact of sudden passion in such a defendant's favor. But to say that there was no evidence of that mental state is simply incorrect.

Our overruling of *Ojeda* is said to conflict with *Marras v. State,* 741 S.W.2d 395, 405 (Tex.Cr.App.1987), and *Gonzales v. State,* 717 S.W.2d 355 (Tex.Cr.App.1986). *Post* at 14. There is no conflict with *Marras,* in which the murderous attack was part of a premeditated robbery scheme. *Gonzales* was an opinion for a plurality of the Court, and it was convincingly criticized in the dissenting opinion as being unfaithful to our prior decisions. It should not be relied on.

■ Finally, the question is not whether "this Court will automatically hold such evidence sufficient to infer sudden passion." *Post* at 14. It is whether there was any evidence from which a rational jury could infer sudden passion. It is not the court's function to determine the weight to be given the evidence; rather it is the jury's duty, under proper instruction, to determine whether the evidence is credible and supports the lesser included offense. *Hayes v. State,* 728 S.W.2d 804 (Tex.Cr.App.1987).

■ In this case, Tyron Parks testified that the shootings took place in the highly charged atmosphere of a fight. He said that the victims, Boyd and Clark, were acting hostile and intoxicated. At one point during the altercation, Parks thought Boyd was trying to pull a pistol out. Later, Boyd pushed the appellant, and then tried to grab Parks. Parks considered cutting Boyd's throat, but then decided against it and threw Boyd to the ground. Boyd got up and ran over to the car in the street next to the club, where Clark was revving the engine. Clark tried to run over the appellant and Parks with the car, missed, and then backed up and tried again. It was at this point that the appellant got a rifle and shot Boyd and Clark. The jury could have rationally found that such events would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection, and therefore the jury could have acquitted the appellant on the charge of capital murder and found him guilty only of voluntary manslaughter. The trial court erred in refusing to charge the jury on the lesser included offense of voluntary manslaughter.

### Murder

In his eighth point of error, the appellant argues that the trial court erred when it denied his request to instruct the jury on the lesser included offense of murder. Again the two-step test applies.

"A person commits an offense [of murder] if he intentionally or knowingly causes the death of an individual." Texas Penal Code § 19.02(a)(1). Capital murder is such a murder (in some subsections it must be an intentional murder; in others it may be an intentional or a knowing murder) with an additional element.[4] Therefore murder is a lesser included offense of capital murder under Code of Criminal Procedure Article 37.09(1). *Ex parte McClelland*, 588 S.W.2d 957, 959 (Tex.Cr.App.1979). If in a capital murder case there is some evidence before the jury that would permit it to rationally find that a defendant committed the requisite form of murder under Section 19.02(a)(1), but that the additional element in Section 19.03 was not proved, then the defendant is entitled to a charge on the lesser included offense of murder. *Robertson v. State*, 871 S.W.2d 701, 706 (Tex.Cr.App.1993). *See* Tex. Penal Code § 19.03(c).[5]

In this case the appellant's offense was in violation of Penal Code § 19.03(a)(7)(A): "A person commits an offense if he commits murder as defined under Section 19.02(a)(1)...and the person murders more than one person during the same criminal transaction." If the evidence would have allowed a rational jury to find that the appellant committed murder by intentionally or knowingly causing the death of an individual, but that he did not murder more than one person during the same criminal transaction, the appellant was entitled to a charge on the lesser included offense of murder.

The appellant argues that if the actor intentionally or knowingly causes the deaths of two individuals during the same criminal transaction, but one of the killings was justified under the law, then the person has committed only one murder. Therefore the murder could not be a capital murder under Penal Code § 19.03(a)(7)(A), because the actor did not "murder more than one person." The argument is well taken, and the terms of the statute compel us to accept it.

There was evidence in this case that Clark was killed in self-defense. *See* Texas Penal Code § 9.31. There was testimony that Clark tried twice to run over the appellant with his car, and that the appellant twice retreated. There was evidence that the appellant was standing just behind Clark's car when he shot and killed Clark and Boyd. The trial court found that the evidence required a charge on self-defense.

We notice that the court's charge on self-defense authorized the jury to acquit the appellant completely if they believed, or had a reasonable doubt, that he was acting in self-defense against either Clark or Boyd. On its face this charge seemed to give the appellant a greater protection than a charge au-

---

**4.** At the time of the offense the capital murder statute, Tex. Penal Code § 19.03(a), read:

A person commits an offense if he commits murder as defined under Section 19.02(a)(1) of this code and:

(1) the person murders a peace officer or firemen who is acting in the lawful discharge of an official duty and who the person knows is a peace officer or firemen;

(2) the person intentionally commits the murder in the course of committing or attempting to commit kidnaping, burglary, robbery, aggravated sexual assault, or arson;

(3) the person commits the murder for remuneration or the promise of remuneration or employs another to commit the murder for remuneration or the promise of remuneration;

(4) the person commits the murder while escaping or attempting to escape from a penal institution;

(5) the person, while incarcerated in a penal institution, murders another:

(A) who is employed in the operation of the penal institution; or

(B) with the intent to establish, maintain, or participate in a combination or in the profits of a combination;

(6) the person, while serving a sentence of life imprisonment or a term of 99 years for the commission of any offense listed in Section 3g(a)(1), Article 42.12, Code of Criminal Procedure, murders another; or

(7) the person murders more than one person:

(A) during the same criminal transaction; or

(B) during different criminal transactions but the murders are committed pursuant to the same scheme or course of conduct; or

(8) the person murders an individual under six years of age.

**5.** Tex. Penal Code § 19.06(c) reads: "If the jury or, when authorized by law, the judge does not find beyond a reasonable doubt that the defendant is guilty of an offense under this section, he may be convicted of murder or of any other lesser included offense."

thorizing a conviction for the lesser included offense of murder. But the death sentence may not constitutionally be imposed after a jury verdict of guilt of a capital offense where the jury was not permitted to consider a verdict of guilt of a lesser included offense that was raised by the evidence. *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). The *Beck* rule was explained in *Spaziano v. Florida*, 468 U.S. 447, 455, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984):

> The Court in *Beck* recognized that the jury's role in the criminal process is essentially unreviewable and not always rational. The absence of a lesser included offense instruction increases the risk that the jury will convict, not because it is persuaded that the defendant is guilty of capital murder, but simply to avoid setting the defendant free. In *Beck,* the Court found that risk unacceptable and inconsistent with the reliability this Court has demanded in capital proceedings. *Id.,* at 643, 100 S.Ct. 2382. The goal of the *Beck* rule, in other words, is to eliminate the distortion of the factfinding process that is created when the jury is forced into an all-or-nothing choice between capital murder and innocence. *Id.,* at 638–643, 100 S.Ct. 2382.

In this case, the jury was not authorized to consider convicting the appellant of any lesser included offense.

If the appellant was justified in killing Clark in self-defense, then he did not murder Clark; if he did not murder Clark, then the murder of Boyd was not capital murder, since the appellant did not murder more than one person. The trial court therefore erred in not giving the jury a charge on the lesser included offense of murder, which the appellant requested. For the error in refusing to charge on the lesser included offense of murder, the judgment must be reversed.

### Other Points

In his third point of error, the appellant argues that the trial court erred in failing to set aside the indictment for its failure to allege everything which is necessary to be proved. *See* Tex.Code Crim. Proc. art. 21.03. Specifically, the indictment did not state the requirements to prove special issue number one, which mandates that the jury must find that there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society, before the jury can assess the death penalty as punishment. *See* Texas Code of Criminal Procedure Article 37.071(2)(b)(1).

It is well-settled law that an indictment will not be set aside for failing to allege those punishment stage issues on which the prosecution bears the burden of proof. *See Callins v. State*, 780 S.W.2d 176, 187 (Tex.Cr.App.1986). A defendant indicted for capital murder is effectively put on notice that the special issues under Article 37.071 will be raised, so such procedural provisions need not be alleged in the indictment. *See ibid.* The special issues of Article 37.071 are not an element of the offense of capital murder. *See Rosales v. State*, 748 S.W.2d 451, 458 (Tex.Cr.App.1987). *See also Castillo v. State,* 739 S.W.2d 280, 299 (Tex.Cr.App.1987); *Sharp v. State,* 707 S.W.2d 611, 624 (Tex.Cr.App.1986) (holding the indictment need not state more than is necessary to be proven to sustain a conviction). Point of error number three is overruled.

Point of error four, that the death penalty violates the Cruel and Unusual Punishments Clause of the Eighth Amendment, is overruled. *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976).

Point of error five, that the death penalty violates the Charter of the United Nations, was not raised by a request, objection, or motion in the trial court, as Texas Rule of Appellate Procedure 33.1(a) requires. The point is overruled.

The five remaining points of error are unlikely to recur on remand, and we shall not address them.

For the reasons stated, we reverse the judgment and remand this cause for a new trial.

KELLER, J., filed a concurring and dissenting opinion in which MEYERS, J., joined.

McCORMICK, P.J., and OVERSTREET, J., concur in the Court's judgment.

**14**

KELLER, Judge, concurring and dissenting.

A defendant is entitled to a jury instruction on a lesser offense if and only if: (1) the lesser offense is included within the proof necessary to establish the offense charged, and (2) some evidence exists in the record that would permit a jury rationally to find that, if the defendant is guilty, he is guilty only of the lesser offense. *Rousseau v. State,* 855 S.W.2d 666, 673 (Tex.Crim.App. 1993), *cert. denied,* 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993). I agree with the majority that voluntary manslaughter and murder are lesser included offenses of capital murder. Nevertheless, I disagree with the majority's conclusion that some evidence exists to show that appellant, if guilty, is guilty only of voluntary manslaughter.[1]

At the time appellant committed the offense for which he was convicted, voluntary manslaughter contained all of the elements of murder plus the additional element that the death was caused "under the immediate influence of sudden passion arising from an adequate cause." Texas Penal Code § 19.04(a)(1994). "Sudden passion" is defined as *"passion* directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." § 19.04(b)(emphasis added). "Adequate cause" is defined as "cause that would *commonly* produce a degree of anger, rage, resentment, or terror *in a person of ordinary temper,* sufficient to render the mind incapable of cool reflection." § 19.04(c)(emphasis added). Thus, the distinguishing element in voluntary manslaughter consists of two parts: (1) sudden passion, and (2) adequate cause. Sudden passion is subjective—the defendant actually experiences passion at the time of the offense—

while adequate cause is objective—a person of ordinary temper would experience the requisite degree of passion. To satisfy the "guilty only" prong of *Rousseau,* the record must contain evidence as to both parts. But the majority's holding collapses these two parts into one: under the majority opinion, the record need contain only evidence of adequate cause and this Court will automatically hold such evidence sufficient to infer sudden passion. This holding directly conflicts with *Ojeda v. State,* 712 S.W.2d 742, 744 (Tex.Crim.App.1986), which the majority overrules. The majority's holding also conflicts with our approval of *Ojeda* in *Marras v. State,* 741 S.W.2d 395, 405 (Tex.Crim.App. 1987), *overruled on other grounds by, Garrett v. State,* 851 S.W.2d 853, 860 (Tex.Crim. App.1993) and with our pronouncement in *Gonzales v. State,* 717 S.W.2d 355, 357 (Tex.Crim.App.1986)(plurality opinion) that we will not infer material evidence into the record on whether a defendant actually experienced sudden passion. And, our holdings in these cases have been followed in a number of court of appeals cases. *See Willis v. State,* 936 S.W.2d 302, 309 (Tex.App.—Tyler 1996, pet. ref'd); *Corral v. State,* 900 S.W.2d 914, 919 (Tex.App.—El Paso 1995); *Carrillo v. State,* 889 S.W.2d 501, 504 (Tex.App.—Houston [14th Dist.] 1994); *Flores v. State,* 866 S.W.2d 682, 684 (Tex.App.—Houston [1st Dist.1993). The majority believes that it must overrule established caselaw because that caselaw fails to take into account the general legal maxim that an element of an offense may be proved by circumstantial evidence. I believe that the majority is mistaken.

Contrary to the majority's pronouncement, *Ojeda* does not exclude the use of circumstantial evidence to prove sudden passion. We explained that sudden passion "is a subjective concept, *although sometimes out-*

---

1. I also have doubts about the majority's holding concerning the lesser offense of murder. I agree with the majority's contention that the lesser included offense of murder is raised if the issue of self-defense is raised because appellant could be guilty of murdering one of the alleged victims but have a valid self-defense claim as to the other. After reviewing the record, I am uncertain that the following issues were raised by the evidence: (1) that appellant actually believed

that his life was in danger at the time of the shooting, and (2) that a reasonable person in appellant's position would not have retreated. Evidence as to both of those issues would be essential to raising a self-defense claim. *See* Texas Penal Code § 9.32(a)(2) & (3). Resolution of those issues appears to be a close call, and largely fact-bound. Because this is a dissenting opinion, I will assume that the majority is correct in its assessment.

*wardly manifested."* 712 S.W.2d at 744 (emphasis added). We did not exclude the possibility of proving sudden passion through circumstantial evidence, and in fact, we admitted such a possibility when we stated that sudden passion could be "outwardly manifested." Sudden passion can, of course, be raised by direct evidence, i.e. testimony by the defendant or another witness [2] as to the defendant's mental state. But, consistent with *Ojeda,* sudden passion can also be inferred from the conduct and appearance of the defendant. Some examples could be: running, striking inanimate objects without any apparent rational purpose, shouting, screaming, crying, and facial expressions.[3] But, there must be some evidence from some source that will "demonstrate that the actor *is* in the throes of *actual,* subjective passion." *Carrillo,* 889 S.W.2d at 503 (emphasis added). Evidence of adequate cause does not automatically raise the issue of sudden passion: "There could be evidence of a cause which could produce anger, rage, resentment, or terror adequate to make an ordinary person incapable of cool reflection, but no evidence that the accused acted in an excited and agitated state of mind at the time of the killing." *Merchant v. State,* 810 S.W.2d 305, 309–310 (Tex.App.—Dallas 1991)(discussing different permutations of evidence in which voluntary manslaughter is not raised).

Automatically inferring sudden passion from evidence of adequate cause is misguided because each concept has a different focus. Sudden passion focuses on the *defendant's* conduct while adequate cause focuses on the conduct of the victim and/or third parties. The majority is correct that mental culpability has generally been inferred from circum-

stances. But the circumstances in question are those that involve the defendant's *own* conduct rather than the actions of others.[4] Numerous times we have stated that intent may be inferred from the conduct of the defendant. *Alvarado v. State,* 912 S.W.2d 199, 207 (Tex.Crim.App.1995)(intent to steal); *Robertson v. State,* 871 S.W.2d 701, 705–706 (Tex.Crim.App.1993), *cert. denied,* 513 U.S. 853, 115 S.Ct. 155, 130 L.Ed.2d 94 (1994)(same); *Hernandez v. State,* 819 S.W.2d 806, 810 (Tex.Crim.App.1991), *cert. denied,* 504 U.S. 974, 112 S.Ct. 2944, 119 L.Ed.2d 568 (1992)(intent to kill). Even in cases that have not so clearly stated that proposition, the circumstances used to infer mental culpability have been the defendant's own conduct. *See Jones v. State,* 944 S.W.2d 642, 647 (Tex.Crim.App.1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997)(intent to kill inferable from use of deadly weapon); *Butler v. State,* 769 S.W.2d 234, 240 (Tex.Crim.App.1989), *overruled on other grounds by, Geesa v. State,* 820 S.W.2d 154, 161 (Tex.Crim.App. 1991) (intent to steal inferable from the fact that defendant entered a cab with a loaded .38 revolver only two blocks from his residence, executed the cab driver, and reached the front seat and ransacked the pocket of the decedent); *Lewis v. State,* 715 S.W.2d 655, 657 (Tex.Crim.App.1986)(burglary with intent to commit theft inferable from the fact that defendant was seen in the yard of another person's house, ducked behind bushes when a car passed, hid under clothes in a portable closet, and moved a ladder to a tall closet); *Ranson v. State,* 707 S.W.2d 96, 97 (Tex.Crim.App.1986), *cert. denied,* 479 U.S. 840, 107 S.Ct. 147, 93 L.Ed.2d 88 (1986)(intent to gratify sexual desire inferable from

**2.** For an analysis concerning the admissibility of lay opinion testimony concerning a defendant's mental state, *see Fairow v. State,* 943 S.W.2d 895 (Tex.Crim.App.1997).

**3.** I do not mean to set out an exclusive list. Nor do I express any opinion about what combination of circumstances would be sufficient to raise sudden passion.

**4.** The majority understates the effect of its holding when it says that evidence of adequate cause "can" also constitute evidence of sudden passion. Under the majority's opinion, evidence of ade-

quate cause will *automatically* constitute evidence of sudden passion in every case. The majority reasons that voluntary manslaughter was raised in this case because "the jury could have rationally found that such events *would commonly* produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection" (slip op. at 14)(emphasis added) That, of course, is the definition of "adequate cause," and the majority has written sudden passion out of the code for the purpose of submitting a jury instruction.

defendant's act of placing his mouth on genitals and breasts of complainant, inserting his finger in her vagina, and having her place her mouth on his genitals); *Morgan v. State,* 692 S.W.2d 877, 880–881 (Tex.Crim.App.1985)(intent to gratify sexual desire inferable from repetition of ambiguous sexual behavior).[5]

In the present case, there is no evidence, direct or circumstantial, that the defendant actually experienced sudden passion. There is evidence that a reasonable person might, under the circumstances presented, experience sudden passion, but such evidence merely establishes adequate cause. That is not enough, in my view, to establish sudden passion. The trial court properly denied appellant's requested instruction on voluntary manslaughter.

Therefore, I concur in the majority's disposition of point of error eight, and I dissent to the majority's disposition of point of error seven.

MEYERS, J., joins.

---

**5.** Although on some occasions we have recognized what may appear to be other circumstantial justifications, a closer examination of .the circumstance involved shows it to be based upon the defendant's conduct. In *Patrick v. State,* in addition to holding that intent could be inferred from the words and conduct of the defendant, we also held that intent could be inferred from the extent of the victim's injuries and the relative size and strength of the parties. 906 S.W.2d 481, 487 (Tex.Crim.App.1995), *cert. denied,* 517 U.S. 1106, 116 S.Ct. 1323, 134 L.Ed.2d 475 (1996). The extent of a victim's injuries is, of course, a reflection of the strength of a defendant's attack, and therefore, does involve the defendant's conduct. As for the size and strength of the parties, *Patrick* cites *Lindsey v. State,* 501 S.W.2d 647, 648 (Tex.Crim.App.1973), *cert. denied,* 416 U.S. 944, 94 S.Ct. 1953, 40 L.Ed.2d 296 (1974), which in turn cites *Encina v. State,* 471 S.W.2d 384 (Tex.Crim.App.1971). *Encina* involved an adult attacking a two-year-old child. *Id.* at 387. We inferred an intent to kill from the defendant's conduct in assaulting such a helpless individual. *Id.*