In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00078-CR
______________________________


MICHAEL DWAN KAY, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 30770-A


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

            The autopsy of Michael Hendrix's body revealed numerous and devastating injuries to
Hendrix and concluded his death was caused by "homicidal violence." Charged in the death were
Michael Dwan Kay and Aaron Higginbotham. This appeal is from Kay's jury conviction for capital
murder and the resulting mandatory sentence of life imprisonment. See Tex. Pen. Code Ann. §§
12.31 (life sentence), 19.03 (capital murder defined) (Vernon Supp. 2005). Kay's sole point of error
asserts the trial court erred in refusing to submit to the jury the lesser-included offense of
manslaughter. See Tex. Pen. Code Ann. § 19.04 (Vernon 2003) (manslaughter defined). We affirm
the trial court's judgment because we find no evidence Kay had a reckless, as opposed to an
intentional or knowing, state of mind in killing Hendrix.
            The tragic story begins June 24, 2003, with Kay and Higginbotham—with no vehicle
available to them—obtaining a ride to Baby Doll's, a "topless" bar in Gregg County. There, the two
friends met Hendrix, who had just turned eighteen and apparently wanted to have some fun. Hendrix
had little or no money but drove a pickup truck. Ultimately, the three men left in Hendrix's truck,
ostensibly to seek prostitute services. They drove to a remote Gregg County location where Hendrix
was to perform oral sex in exchange for money to pay a prostitute. There, Hendrix was savagely
beaten. There were indications Hendrix was also run over with his own truck during the event. 
Then, Hendrix was thrown, first, into an oilfield pump jack and, ultimately, into the Sabine River. 
His body was found floating in the river two days later. Higginbotham was soon arrested. Kay was
arrested some days later in Buffalo, New York. 
            Kay contends the trial court erred by failing to charge the jury on the lesser-included offense
of manslaughter. To determine whether a charge on a lesser-included offense should be given, a
two-step test is to be used. Mathis v. State, 67 S.W.3d 918, 925 (Tex. Crim. App. 2002); see Aguilar
v. State, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985); Royster v. State, 622 S.W.2d 442, 444 (Tex.
Crim. App. 1981) (plurality opinion). The first step is to decide whether the offense is a
lesser-included offense of the offense charged. See Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon
1981); Mathis, 67 S.W.3d at 925. The second step of the test requires us to evaluate the evidence
to determine whether there is some evidence that would permit a jury rationally to find that the
defendant is guilty only of the lesser offense. Mathis, 67 S.W.3d at 925; Wesbrook v. State, 29
S.W.3d 103 (Tex. Crim. App. 2000); Moore v. State, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998). 
Further, the evidence must establish the lesser-included offense as a valid rational alternative to the
charged offense. Wesbrook, 29 S.W.3d at 103; Arevalo v. State, 943 S.W.2d 887, 889 (Tex. Crim.
App. 1997). This means the evidence must allow a jury to rationally conclude the defendant was
guilty only of the lesser offense. Wesbrook, 29 S.W.3d at 103.
 
 

            The Texas Code of Criminal Procedure provides that an offense is a lesser-included offense
if:
(1) it is established by proof of the same or less than all the facts required to
establish the commission of the offense charged;
(2) it differs from the offense charged only in the respect that a less serious
injury or risk of injury to the same person, property, or public interest suffices to
establish its commission;
(3) it differs from the offense charged only in the respect that a less culpable
mental state suffices to establish its commission; or
(4) it consists of an attempt to commit the offense charged or an otherwise
included offense.

Tex. Code Crim. Proc. Ann. art. 37.09.
            Kay argues the evidence would support a jury finding that, when Kay or Higginbotham threw
Hendrix into the pump jack or into the river, it was done with a reckless state of mind. Kay bases
that argument on the jailhouse letter he wrote to Higginbotham. We quote the relevant portions of
the letter, seeking to be as faithful to the original spelling and punctuation as possible in this format:
Rember they can't charge us with "capiotal" murder capiotal murder is premendataed
the part about the truck be sure that it was a "Accident" that we did not mean it, and
the pump jack, is we felt bad because the boy was suffering as long as it was a
accient they can only get us on murder and try to (get it down to) us involitary
manslayer. . . . (1) Murder runs form 5 years to life (2) Manslayer runs form 5 years
to 20 years >< so we might get lucky.>
 
The part aboat the truck we need to say that you was going to turn it around and do
some dounts so you gased it. At the same time I hit him and it knocked him in to the
truck. The truck pulled him under then I hollowed when the truck hit him But he was
pented under so we had to back up to get him out We got him out you got out of the
truck We didn't know Whatt to do. He was almost dead No Body would belivle us
at the hospital. And we pantice.
 
OR Something Like that tEell me what you think. Becauze wev'e got to make are
state ments the same.
We have emphasized certain words and phrases above which convince us—as it did the trial
court—that this letter is simply an effort to coach Higginbotham on what to say, or to harmonize the
stories the two would tell, in order to minimize the punishment for what they had done. We do not
believe any rational juror could interpret this letter as an effort to recount what actually happened. 
Instead, the letter can be read only as an effort to coach Higginbotham to lie. We note that there is
no actual claim of accident or recklessness made in the letter and that it entirely consists of story
elements proposed by Kay to Higginbotham concerning which Higginbotham is requested to
comment. We see no evidence in it that would support a rational jury finding of a "reckless" state
of mind, as is urged by Kay.
            Though not explicitly referenced in his appellate brief, Kay also arguably relies on two letters
from James Hayes to Kay, two transcribed statements Hayes gave to police, and Hayes' trial
testimony. We have examined those and find no evidence that could support a jury finding that
Kay's state of mind was reckless only. We briefly review them below.
            Letter A, from Hayes to Kay, reads, in pertinent part:
I hate what happened but I totally blame Aaron he was pumped up / I understand but
thats [sic] a little much to do! . . . You and I beleave [sic] my Bro is that you was
[sic] just put in a bad situation trying to help a bro out and ended upon [sic] the laws
[sic] very pissey [sic] side.

Nothing in the above letter suggests any reckless state of mind.
            Letter B, from Hayes to Kay, adds, "I wish you would have not tried to help Arrons [sic] puck
[sic] killer ass. I know it was all his fault and I hate him for his supidity [sic]." Nothing in that letter
suggests recklessness.
            Hayes' June 26, 2003, statement to police contains a number of statements, none of which
would support a finding of recklessness:
Aaron was upset, cause him and his old lady was fighting, she had left him or
something.
 
Dwain [i.e., Kay] recommended . . . to get Aaron away from Gladewater, . . . to keep
Aaron out of trouble.
 
[The next morning,] I checked my phone. . . . When I saw that they didn't call, I
knew that they probably were in trouble somewhere and probably were in jail. I
knew when I left them that Aaron [was] mad about his old lady, he was a ticking time
bomb.
 
[Kay] told me that something about Aaron and him got into it with somebody last
night and that Aaron hurt the boy.
 
Dwain is not the type to go and beat somebody down like that. You pretty much
have to offend him first. Aaron is the type that he would hurt anybody.
 
Hayes gave another statement to police, January 21, 2005, which contained this statement, "I . . .
remember now that Dwan told me that when the boy got on his knees to have oral sex he started
beating him. He also told me that they had hurt somebody. He said that after beating the boy they
threw him into a pump jack." Nothing in the above quotes suggests a reckless, as opposed to an
intentional or knowing, state of mind.
            Other than portions of Hayes' testimony that undermined his credibility, in only one place
does any of his live trial testimony tend to exonerate Kay. Hayes acknowledged in his testimony
that, in his first letter to Kay, he wrote that he knew "it was all Aaron's fault." Hayes' explanation
for that early statement was that he had once thought that, but had reconsidered and realized it took
two to do what had been done to Hendrix. That claim is no evidence of a reckless state of mind.
            Because we find no evidence of a reckless state of mind, we overrule Kay's sole point of error
and affirm the judgment of the trial court.



 
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          November 14, 2005
Date Decided:             December 1, 2005

Do Not Publish