Opinion Issued October 22, 2009







 








In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00584-CR

__________



RUDY RODRIGUEZ JR., Appellant


V.


THE STATE OF TEXAS, Appellee




 On Appeal from the 183rd District Court 

Harris County, Texas

Trial Court Cause No. 1069837







MEMORANDUM OPINION

 Appellant, Rudy Rodriguez Jr., appeals from a judgment that sentenced him to
life in prison for the murder of Jose Ligas. See Tex. Penal Code Ann. § 19.02
(Vernon 2003). Appellant pleaded not guilty. The jury found appellant guilty and
determined his sentence. In his sole issue, appellant contends the trial court erred by
denying his request for a jury instruction on the lesser included offense of
manslaughter. Because no evidence raised the issue, we conclude the trial court
properly refused to instruct the jury on the charge of manslaughter. We affirm. Background


 Kevin Pinell was a 21 year old man who lived in a house on Shady Brook
Drive with his father. Pinell was in a relationship with Amber Deollos, who dated
Ligas before she began seeing Pinell. Deollos's sister, Alexis, lived near Pinell and
was dating appellant. 

 Early one morning in May 2006, appellant and Pinell went to Alexis's house,
where they found Deollos, Alexis, and Ligas. This surprise encounter caused an
argument between appellant and Ligas. When Alexis broke up the argument,
appellant and Pinell returned to Pinell's house, where they remained together
throughout that night, the following day, and the following evening.

 The evening after the argument, at around sunset, appellant, Pinell, and two
friends smoked marijuana in Pinell's living room. While in the living room, Pinell
saw his father's handgun lying on the sofa and picked it up, placing it near where he
was seated.

 Later that evening, Joseph Pryor, Pinell's friend, arrived at the garage of the
house. For reasons not shown in the record, Pryor tried to stab Pinell, but Pinell
escaped into the house, where he retrieved the handgun and placed it inside his
waistband. Pinell believed appellant probably saw Pinell with the gun because
appellant was nearby when Pinell took possession of the gun. 

 Pinell and appellant walked outside to escort Pryor away. While they were
outside, a truck pulled up and parked in front of the driveway of Pinell's house. Ligas
was the driver of the truck, and his passenger was Andre Colunga. While Ligas
remained in the driver's seat of the truck, Pinell heard Ligas "taunting" appellant by
chanting "Rudy, Rudy." 

 Appellant twice asked Pinell for the handgun, but Pinell did not give appellant
the gun. Appellant reached into Pinell's waistband, and grabbed the gun. Appellant
told Pinell, "Man, I got this." According to Pinell, appellant started running towards
the truck, and Pinell tried to stop appellant by grabbing appellant's shirt, but appellant
managed to get closer to the truck. Pinell described appellant as "a couple of feet
away from the passenger's side." At that point, according to Pinell, Pinell pushed
appellant's hand down because he "didn't want [appellant] to point the gun."

 Appellant held the gun to his side as he walked quickly from the passenger side
of the truck to the front of the truck telling the occupants, "Get out of the truck." As
appellant walked in front of the truck, Pinell saw Ligas "spinning the tires" by
"hitting the gas real hard and then pressing the brake . . . [and] hitting the gas real
hard, pressing the brake." As Ligas moved the truck in this manner, appellant pointed
the gun at Ligas. When appellant reached the driver's side of the truck, he started
shooting while walking towards the back of the truck. Pinell heard three gunshots. 
The truck then started skidding before it crashed into a house. Appellant ran into the
neighborhood on foot.

 Colunga explained the events similarly to Pinell's description, but with a few
minor differences. Colunga said that when appellant walked towards the passenger
side of the truck, appellant had his hands in his pockets, and he pulled the gun out
when he reached the passenger's window. Appellant said, "What's up?," as he stuck
the gun in Colunga's face. When appellant did this, Ligas told appellant to "be a
man" and fight him instead of "pulling a gun." Ligas also told appellant "there's no
need for a gun." According to Colunga, after appellant pointed the gun, Ligas saw
Pinell run up to appellant and push appellant's hand down, asking him, "What the hell
. . . are you doing?" Appellant, however, raised the gun again, continuing to point the
gun at Colunga and Ligas for approximately 30 seconds as appellant stood on the
passenger side of the truck. Colunga stated appellant walked around the front of the
truck, keeping the gun pointed at Ligas the entire time. After appellant was no longer
in front of the truck and had reached the driver's front side, Ligas ducked and
accelerated the truck to escape. Ligas was not aiming the truck at appellant,
according to Colunga. Colunga said appellant did not have to jump to get out of the
way and did not fall. Colunga testified that Ligas never lurched the truck at appellant
while appellant was in front of the truck. As soon as Ligas hit the gas, Colunga heard
a single gunshot and saw a flash from the gun. Ligas slumped over before the truck
crashed into a house. 

 Several days later, authorities recovered a gun from a nearby ditch. Tests
matched the gun to the two shell casings at the scene of the shooting. Autopsy results
confirmed that the cause of Ligas's death was a single gunshot wound to the head.

 Appellant did not testify in the guilt-innocence phase of trial. Appellant
requested a jury instruction on the lesser offense of manslaughter, but the trial court
refused the instruction. The instructions to the jury, however, gave the jury the option
of acquitting appellant if they determined he used deadly force to defend himself.

 After he was found guilty by the jury, appellant testified in the punishment
phase of trial. Appellant stated that the acceleration and sharp left turn of the truck
hit him in the knee, caused him to fall, and "he retrieved the weapon and fired at the
truck in a completely scared state."

Jury Instruction on Lesser Offense of Manslaughter

 Appellant's sole issue challenges the trial court's refusal of his requested jury
instruction on the lesser-included offense of manslaughter. In his brief, appellant's
entire argument is, as follows:

[T]here is evidence that appellant approached the truck with the gun
drawn and pointed. However, there is also evidence that Pinell was able
to approach appellant and lower his arm. There is evidence that
[appellant] crossed in front of the pick up with the weapon at his side. 
There is also evidence that Ligas ducked inside the truck's cabin,
accelerated, and turned left toward appellant as he was approaching the
driver's door. There is evidence that the velocity of the truck was
causing appellant's position to approach the rear section of the truck at
the time the shots were fire[d]. There is evidence that at least one of the
shots struck behind the driver's side window, penetrating the rear
section of the driver's side door. The State responds that there is no evidence in the record establishing that, if
appellant is guilty, he is guilty only of manslaughter.

 A. Applicable Law

 We review the trial court's decision regarding whether to include a
lesser-included offense in the jury charge for abuse of discretion. See Jackson v.
State, 160 S.W.3d 568, 574-75 (Tex. Crim. App. 2005). In order to demonstrate the
trial court erred by refusing to instruct the jury on a lesser offense, the evidence must
show that (1) the lesser offense is a lesser-included offense of the charged offense,
and (2) the record contains some evidence that permits a rational jury to find that the
defendant is guilty only of the lesser-included offense. Hall v. State, 225 S.W.3d 524,
535 (Tex. Crim. App. 2007).

 B. First Prong is Established

 Manslaughter is a lesser-included offense of the offense of murder because "it
differs from the offense charged only in the respect that a less culpable mental state
suffices to establish its commission." See Tex. Code Crim. Proc. Ann. art. 37.09(3)
(Vernon 2006); Moore v. State, 969 S.W.2d 4, 9 (Tex. Crim. App. 1998). Murder
requires proof that the actor acted intentionally or knowingly. Tex. Penal Code
Ann. § 19.02. By contrast, manslaughter requires proof that the defendant acted
recklessly--that is, that he consciously disregarded a substantial risk of which he was
aware. See id. §§ 6.03, 19.04(a) (Vernon 2003). Because recklessness is a less-culpable mental state than intent or knowledge, manslaughter is a lesser-included
offense of murder. Moore, 969 S.W.2d at 9. The first prong, therefore, is met. 

 


 C. No Evidence of Second Prong

 Under the second prong, we must examine the record to determine if there is
some evidence that, if the defendant is guilty, he is guilty only of the lesser offense. 
See Hall, 225 S.W.3d at 535. Regardless of its strength or weakness, if any evidence
raises the issue that the defendant was guilty only of the lesser offense, then the
charge must be given. Saunders v. State, 840 S.W.2d 390, 391 (Tex. Crim. App.
1992). The credibility of the evidence and whether it conflicts with other evidence
or is controverted may not be considered in determining whether an instruction on a
lesser-included offense should be given. Banda v. State, 890 S.W.2d 42, 60 (Tex.
Crim. App. 1994). In the instant case, we must determine whether any evidence
raises a fact issue that appellant shot recklessly rather than intentionally or
knowingly. Patterson v. State, 950 S.W.2d 196, 200 (Tex. App.--Dallas 1997, pet.
ref'd.). 

 At the outset, we note that appellant testified in the punishment phase of trial
that the truck's acceleration and sharp left turn caused the truck to hit him in the knee,
and caused him to fall, so "he retrieved the weapon and fired at the truck in a
completely scared state." Appellant, however, did not testify in the guilt-innocence
phase of trial. Although this evidence may have been enough to require the court to
include a manslaughter instruction in the jury charge had it been introduced in the
guilt-innocence phase of trial, the evidence was not before the court at the time the
court made its decision to refuse the jury instruction. Appellant acknowledges in his
appellate brief that, in reviewing the guilt-innocence jury instructions, it would be
inappropriate for the court to consider evidence that was raised for the first time in
the punishment phase of trial. We cannot conclude the trial court made an erroneous
decision based on evidence not before it when it made its decision. See Lopez v.
State, 574 S.W.2d 563, 565 (Tex. Crim. App. 1979) (holding charge on defensive
theory not required where appellant did not testify and no other evidence raised the
defensive theory at trial).

 Appellant points to evidence that Pinell lowered appellant's arm, but that
occurred when appellant was walking to the passenger side of the truck; this did not
occur when appellant fired the gun while standing near the driver's side of the truck. 
Similarly, appellant points to evidence that he crossed in front of the truck with the
weapon at his side, but the shooting did not occur while appellant was crossing in
front of the truck. Both Pinell and Colunga testified that appellant fired the gun while
appellant was on the driver's side of the truck. Therefore, the lowering of the gun at
a different point in time than when the shooting occurred is no evidence that appellant
consciously disregarded a substantial risk of which he was aware when he fired the
gun. See Tex. Penal Code Ann. §§ 6.03, 19.04(a). 

 Appellant contends the evidence shows Ligas ducked inside the truck's cabin,
accelerated, and turned left toward appellant as appellant was approaching the
driver's door. This is some evidence that appellant shot Ligas to defend himself from
imminent bodily injury by Ligas, and the trial court did give a deadly force instruction
to the jury that would allow the jury to acquit appellant if it believed appellant shot
Ligas to defend himself from Ligas. Although the evidence described by appellant
would support a jury instruction on the use of deadly force to defend one's self, the
evidence does not support a recklessness instruction. See Tex. Penal Code Ann. §§
6.03, 19.04(a); see Kennedy v. State, 193 S.W.3d 645, 652 (Tex. App.--Fort Worth
2006, pet. ref'd) (holding instruction on manslaughter not warranted because no
rational juror could find defendant acted recklessly based on evidence describing self-defense); Martinez v. State, 16 S.W.3d 845, 848 (Tex. App.--Houston [1st Dist.]
2000, pet. ref'd) (noting one cannot accidentally or recklessly act in self-defense). 

 No evidence was introduced at the guilt-innocence phase of trial to show that
at the time appellant fired the gun Ligas was aiming the truck at appellant, that
appellant had to jump out of the way of the truck, or that appellant fell. No evidence
shows that appellant consciously disregarded a substantial risk of which he was aware
when he fired the gun. The evidence in the record supports only the determination
that appellant fired the gun intentionally or knowingly either to harm Ligas because
of the conflict between him and Ligas or to defend himself from Ligas. See Tex.
Penal Code Ann. §§ 6.03, 19.04(a). 

 No evidence in the record would permit a jury to rationally conclude that
appellant is guilty only of consciously disregarding a known substantial and
unjustifiable risk that serious bodily injury or death would occur. See Hall, 225
S.W.3d at 535. We hold the trial court properly refused to instruct the jury on the law
concerning manslaughter. 

Conclusion

 We affirm the judgment of the trial court.


 


 Elsa Alcala

 Justice


Panel consists of Justices Keyes, Alcala, and Hanks.


Do not publish. Tex. R. App. P. 47.2(b).