COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NOS. 2-03-451-CR
                    
                                                  2-03-452-CR
  
  
FREDDIE 
JUNIOR GOESSLER                                                   APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
  
  
------------
 
FROM 
THE 396TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
I. Introduction
        A 
jury convicted Appellant Freddie Junior Goessler of robbery and aggravated 
robbery with a deadly weapon. After Goessler pled “true” to the habitual 
offender allegations in the indictment, the trial court assessed punishment at 
thirty-five years’ confinement for each count, to be served concurrently.
        Goessler 
raises five points on appeal. In points one and two, Goessler alleges that the 
evidence is legally and factually insufficient to support his convictions. In 
points three and four, Goessler claims that the trial court reversibly erred and 
abused its discretion in overruling his objection to the State’s improper 
closing jury argument. In his final point, Goessler contends that the trial 
court reversibly erred and abused its discretion in refusing his request that 
the lesser included offense of attempted theft be included in the jury charges. 
We will affirm.
II. Background 
Facts
        A. 
Aggravated Robbery
        On 
the night of June 29, 2002, Filliberto Moran was working at the Subway 
restaurant on East Seminary in Fort Worth, Texas. As he was getting ready to 
close the restaurant, a man came in and asked him for a sandwich. When Moran 
finished making the sandwich, the man took out a knife and hit the cash register 
with it. He then told Moran to get a bag and put money in it. Moran put the 
money in the bag, and the man left the restaurant.
        Moran 
testified that when he saw the knife, he was afraid and that he thought that the 
knife could have hurt him and caused him death or serious bodily injury. He also 
stated that he did not give the man permission to take the money and that the 
man took the money while using the knife. Moran identified Goessler as the man 
with the knife, both in a pretrial photo spread and at trial.
        Fort 
Worth Police Officer Michael Duer was subsequently dispatched to the Subway 
restaurant that night. When Officer Duer arrived, he found that there was only 
one person in the restaurant–Moran. According to Officer Duer, Moran was 
“very nervous, very anxious. He was shaking, kind of unsure, paranoid.” 
Moran described the suspect as a white male, fifty to seventy years old, about 
six feet, three inches, 175-200 pounds, bald on top with hair on the sides, 
wearing a white shirt with stripes, and blue or black jeans. Officer Duer 
collected from the restaurant a surveillance videotape that had recorded the 
robbery.
        Officer 
Duer admitted that the knife may have made a stab mark or indentation on the 
cash register and that the suspect may have left fingerprints on the front door 
of the business. However, based on his observation of the contents of the 
videotape, he decided that the crime scene unit did not need to come to the 
scene.
        According 
to Tim Baker, Supervisor of the county photo lab, at 19:10:31 on the tape, the 
man robbing the Subway restaurant appeared to hit the top of the register with 
an object in his right hand. In the next few seconds, the employee took a bag 
from beneath the counter, opened the register, placed the contents of the 
register into the bag, removed the drawer from the register, and handed the man 
the bag containing the contents of the register. At 19:11:31, the man exited the 
business. About six days prior to trial, Baker went to the Subway restaurant and 
found that the register was not there.
        In 
preparation for trial, Elvis D. Wells, Jr., a criminal investigator with the 
Tarrant County D.A.’s office, went to the Subway restaurant to look for the 
cash register present at the shop on the night of the robbery; he did not find 
it. He subsequently found it at another Subway restaurant in South Arlington on 
the morning of the trial. Investigator Wells looked at the top of the register, 
where the video showed the knife coming into contact with it, but he found no 
marks on the register.
B. Robbery
        On 
the night of July 11, 2002, Tuan M. Dao and his sister, Kim, were working at the 
same Subway restaurant on East Seminary. A man walked up to the drive-through 
window and told Tuan to “sack up the money.” There was a brown paper bag in 
one of the man’s hands. Tuan stated that he was scared, that he thought that 
the suspect might have a gun or a knife, and that he quickly closed the 
drive-through window. Tuan told Kim to call the police, and she began trying to 
do so. The man ran to the front door of the restaurant and tried to open it; 
however, the door was already locked. Tuan saw the man through the glass door. 
The man began shaking the door, then he turned and ran away.
        Fort 
Worth Police Officer Steve Fineman was dispatched on a robbery call to the 
Subway restaurant that same night. Because he had some knowledge of the 
Vietnamese language, he stayed at the scene to help the other officers in case 
Tuan or Kim needed translation. Officer Fineman described Tuan and Kim as 
“[a]gitated, visibly shaken. They appeared excited and shaken. They were 
obviously very distraught as if they’d been through a frightening 
experience.”
        Fort 
Worth Police Officer Keith Savoy was on duty that night when he received a call 
that the Subway restaurant had been robbed. While Officer Savoy was en route to 
the restaurant, he saw another officer, Ensey, at a Sonic restaurant; she was 
out of her car, approaching a man. Officer Savoy subsequently discovered that 
the man had first been seen about half a block from the Subway restaurant. 
Officer Savoy thought that Ensey was going to have a problem with the man, so he 
pulled his car up to block the man’s route. He then left his car to assist 
Ensey.
        According 
to Officer Savoy, the man appeared to match the general description of the 
robbery suspect, so he patted the man down for weapons. During the patdown, he 
found a folding knife with a three-inch blade. After he and Ensey took the man 
to Ensey’s car, Officer Savoy obtained a more detailed description of the 
Subway robbery suspect, which came from one of the employees of the Subway 
restaurant through Officer Fineman. The description matched the man apprehended 
by Officer Savoy and Ensey.
        Ten 
or fifteen minutes after Tuan spoke with the police on the phone, Ensey arrived 
at the restaurant with Goessler in the back of her car, and Tuan identified 
Goessler as the robber. According to Tuan, Goessler was wearing the same clothes 
as the robber. Kim did not go outside and identify anyone. That same night, 
however, she went to the police station and was asked by the police to identify 
the man whom she had seen, using a photo spread. She did not pick Goessler’s 
photograph; instead, she picked someone who looked similar to Goessler. Because 
Tuan identified Goessler at the scene, he was never shown a photo spread.
        At 
trial, Officer Savoy identified Goessler as the man apprehended by him and Ensey, 
and Tuan identified Goessler as the robber. Tuan testified that when the robber 
asked for the money, Tuan feared that he could have been injured or threatened 
with death. He admitted that he never saw a gun or a knife at the drive-through 
window, and when the robber came to the front door, he did not pull a gun or 
knife, try to cut open the door, or say “open this door.”
        Kim 
testified that she never gave the robber permission to take the money. She also 
admitted that the robber did not threaten her and that she did not see him with 
a gun or a knife. Finally, Kim testified that there was no money or property 
taken from the restaurant that evening.
        Based 
on the above evidence, the jury found Goessler guilty of robbery and aggravated 
robbery. After Goessler pled “true” to the habitual offender allegations in 
the indictment, the trial court assessed punishment at thirty-five years’ 
confinement for each count, to be served concurrently. This appeal followed.
III. 
Sufficiency of the Evidence
        In 
his first and second points, Goessler challenges the legal and factual 
sufficiency of the evidence to support his convictions.
A. Standards of Review
        In 
reviewing the legal sufficiency of the evidence to support a conviction, we view 
all the evidence in the light most favorable to the verdict in order to 
determine whether any rational trier of fact could have found the essential 
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Burden v. State, 55 S.W.3d 
608, 612 (Tex. Crim. App. 2001). This standard gives full play to the 
responsibility of the trier of fact to resolve conflicts in the testimony, to 
weigh the evidence, and to draw reasonable inferences from basic facts to 
ultimate facts. Jackson, 443 U.S. at 319, 99 S. Ct. at 2789. When 
performing a legal sufficiency review, we may not sit as a thirteenth juror, 
re-evaluating the weight and credibility of the evidence and, thus, substituting 
our judgment for that of the fact finder. Dewberry v. State, 4 S.W.3d 
735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).
        In 
reviewing the factual sufficiency of the evidence to support a conviction, we 
are to view all the evidence in a neutral light, favoring neither party. See 
Zuniga v. State, No. 539-02, 2004 WL 840786, at *4 (Tex. Crim. App. Apr. 21, 
2004). The only question to be answered in a factual sufficiency review is 
whether, considering the evidence in a neutral light, the fact finder was 
rationally justified in finding guilt beyond a reasonable doubt. Id. at 
*7. There are two ways evidence may be factually insufficient: (1) the evidence 
supporting the verdict or judgment, considered by itself, is too weak to support 
the finding of guilt beyond a reasonable doubt; or (2) when there is evidence 
both supporting and contradicting the verdict or judgment, weighing all of the 
evidence, the contrary evidence is so strong that guilt cannot be proven beyond 
a reasonable doubt. Id. “This standard acknowledges that evidence of 
guilt can ‘preponderate’ in favor of conviction but still be insufficient to 
prove the elements of the crime beyond a reasonable doubt.” Id. In 
other words, evidence supporting a guilty finding can outweigh the contrary 
proof but still be insufficient to prove the elements of an offense beyond a 
reasonable doubt. Id.
        In 
performing a factual sufficiency review, we are to give deference to the fact 
finder’s determinations, including determinations involving the credibility 
and demeanor of witnesses. Id. at *4; Cain v. State, 958 S.W.2d 
404, 407 (Tex. Crim. App. 1997). We may not substitute our judgment for that of 
the fact finder’s. Zuniga, 2004 WL 840786, at *4.
        A 
proper factual sufficiency review requires an examination of all the evidence. Id. 
at *7, 9. An opinion addressing factual sufficiency must include a discussion of 
the most important and relevant evidence that supports the appellant’s 
complaint on appeal. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 
2003).
B. Robbery Conviction
        In 
his second point, Goessler contends that because no property was obtained and no 
weapon was displayed or used in the July 11, 2002 robbery, the evidence is both 
legally and factually insufficient to support his conviction for robbery.
        Section 
29.02 of the Texas Penal Code states, in relevant part, that a person commits 
robbery “if, in the course of committing theft as defined in Chapter 31 and 
with intent to obtain or maintain control of the property, he . . . 
intentionally or knowingly threatens or places another in fear of imminent 
bodily injury or death.” Tex. Penal 
Code Ann. § 29.02(a)(2) (Vernon 2003). Thus, a robbery conviction does 
not require that the defendant obtain or maintain control of the property; 
instead, it requires only that he intend to obtain or control the 
property. Id. § 29.02(a). The phrase “in the course of committing 
theft” includes conduct which occurs in an attempt to commit theft. Id. 
§ 29.01(1). The actual commission of a theft is not a prerequisite to the 
commission of the offense of robbery; the gravamen of robbery is the assaultive 
conduct and not the theft. Autry v. State, 626 S.W.2d 758, 762 (Tex. 
Crim. App.), cert. denied, 459 U.S. 882 (1982); Ex parte Padron, 
16 S.W.3d 31, 34 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d). 
Therefore, proof of a completed theft is not required to establish a robbery. Bustamante 
v. State, 106 S.W.3d 738, 740 (Tex. Crim. App. 2003); Maldonado v. State, 
998 S.W.2d 239, 243 (Tex. Crim. App. 1999). Finally, section 29.02 does not 
require that a weapon be displayed; it requires only that the defendant 
intentionally or knowingly threaten or place another in fear of imminent bodily 
injury or death. Tex. Penal Code Ann. 
§ 29.02(a)(2); see, e.g., Cranford v. State, 377 S.W.2d 957, 959 (Tex. 
Crim. App. 1964) (holding that robbery may be committed where robber makes his 
victim believe that he has weapon).
        Tuan 
testified that a man walked up to the drive-through window at the Subway 
restaurant and told him to “sack up the money.” There was a brown paper bag 
in one of the man’s hands. Tuan stated that he was scared and that he thought 
that the suspect might have a gun or a knife. After Tuan closed the 
drive-through window, the man ran to the front door of the restaurant and began 
shaking it. Officer Fineman described Tuan as “[a]gitated, visibly shaken” 
and “obviously very distraught as if [he’d] been through a frightening 
experience.”
        A 
few minutes after Tuan reported the incident to the police, Goessler was found 
by the police about half a block from the Subway restaurant. The description 
from Tuan and his sister matched Goessler. Tuan identified Goessler twice as the 
robber–when the police brought Goessler back to the restaurant on the night of 
the robbery and at trial. Tuan also testified that when the robber asked for the 
money, Tuan feared that he could have been injured or threatened with death.
        Viewing 
all the evidence in the light most favorable to the verdict, a rational jury 
could have concluded beyond a reasonable doubt that Goessler attempted to commit 
theft, that he intended to obtain money that belonged to the Subway restaurant, 
and that he intentionally or knowingly placed Tuan in fear of imminent bodily 
injury or death. Thus, the evidence is legally sufficient to support 
Goessler’s robbery conviction. See, e.g., Hester v. State, 909 S.W.2d 
174, 178 (Tex. App.—Dallas 1995, no pet.) (holding that evidence was 
sufficient to identify defendant as robber where husband and wife whose 
apartment had been robbed unequivocally testified that defendant had committed 
robbery). Likewise, viewing the evidence in a neutral light and giving due 
deference to the jury’s responsibility to resolve conflicts in the evidence, 
we cannot say that the jury’s verdict is against the great weight and 
preponderance of the evidence. Thus, the evidence is factually sufficient to 
support Goessler’s robbery conviction. See, e.g., Shelton v. State, 
10 S.W.3d 689, 699 (Tex. App.—Amarillo 1999, no pet.) (holding that evidence 
was factually sufficient to show that defendant was perpetrator of robbery where 
victim identified defendant as culprit from photo spread and was positive in her 
identification of defendant). We overrule Goessler’s second point.
C. Aggravated Robbery Conviction
        In 
his first point, Goessler asserts that the evidence is legally and factually 
insufficient to support his conviction for aggravated robbery[2] 
because Filiberto Moran lied as to whether a knife was used in the June 29, 2002 
robbery. According to Goessler, when the register was located and examined, no 
marks of any kind were found on it. Thus, according to Goessler, Moran lied when 
he claimed that the cash register was “stabbed” with the knife that Goessler 
used.
        As 
the record indicates, a surveillance videotape of the robbery shows the robber 
hitting the register with an object in his right hand. The register was 
subsequently found at another Subway restaurant in South Arlington more than a 
year after the robbery had taken place.[3]  
Investigator Wells looked at the top of the register, where the video showed the 
knife coming into contact with it, but he found no marks on the register. Thus, 
the evidence does not demonstrate that Moran lied. Several other possibilities 
may explain the absence of any marks on the register. For instance, the robber 
might not have struck the register with enough force to leave a mark. Also, the 
register may have been repaired in the sixteen months between the robbery and 
the trial, resulting in the removal of any marks on it.
        Moreover, 
in reviewing the legal sufficiency of evidence, we may not re-evaulate the 
credibility of witnesses; that is the exclusive province of the jury. Wyatt 
v. State, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000); Barnes v. State, 
876 S.W.2d 316, 321 (Tex. Crim. App.), cert. denied, 513 U.S. 861 (1994); 
Salazar v. State, 131 S.W.3d 210, 212 (Tex. App.—Fort Worth 2004, pet. 
ref’d); Best v. State, 118 S.W.3d 857, 867 (Tex. App.—Fort Worth 
2003, no pet.).
        Moran’s 
testimony provided the primary evidence against Goessler. Moran identified 
Goessler as the robber. Furthermore, Moran testified that Goessler displayed a 
knife and told Moran to get a bag and to put money in it. Moran stated that when 
he saw the knife, he was afraid and that he thought that the knife could have 
hurt him and caused him death or serious bodily injury. Whether or not Moran 
lied about the robber striking the register with the knife, it was up to the 
jury to assess Moran’s credibility. The jury apparently believed Moran, and we 
must defer to that belief. See Zuniga, 2004 WL 840786, at *4; Cain, 
958 S.W.2d at 407.
        Viewing 
all the evidence in the light most favorable to the verdict, a rational jury 
could have concluded beyond a reasonable doubt that Goessler committed 
aggravated robbery. Likewise, viewing the evidence in a neutral light and giving 
due deference to the jury’s responsibility to resolve conflicts in the 
evidence, we cannot say that the jury’s verdict is against the great weight 
and preponderance of the evidence. Thus, the evidence is legally sufficient to 
support Goessler’s aggravated robbery conviction. Cf. Shelton, 10 
S.W.3d at 699; Hester, 909 S.W.2d at 178. We overrule Goessler’s first 
point.
IV. Jury 
Arguments
        In 
his third and fourth points, Goessler argues that the trial court erred in 
overruling his objections to two comments made by the State during its closing 
argument.
        During 
closing argument, the following comments and exchange took place:
 
[STATE]: 
Robbery is [to] threaten or place somebody in fear. All right. And you got two 
high school kids, brother and sister. This guy--they know they’ve been robbed 
two weeks before. And you get to put--take that into consideration. You get to 
take the mind state--the mental state of the victim into consideration in this 
case. That store has been jacked two weeks prior.
 
[DEFENSE]: 
Your Honor. I’m going to object. There’s no evidence that those kids are 
aware of jacking two weeks before.
 
THE 
COURT: Overruled.
 
[STATE]: 
They got the front door locked for a reason at night.
 
[DEFENSE]: 
Your Honor, again, I’m going to object because he’s now misleading the jury. 
The door is locked because that’s the policy of the store at that time of 
night. That’s misleading the jury.
 
THE 
COURT: Overruled.
 
[STATE]: 
It’s locked as store policy because they don’t want to be robbed through the 
front door by people like Mr. Goessler.

According 
to Goessler, the State’s remarks injected new and harmful facts in the form of 
the prosecutor’s personal opinion.
        To 
be permissible, the State’s jury argument must fall within one of the 
following four general areas: (1) summation of the evidence; (2) reasonable 
deduction from the evidence; (3) answer to argument of opposing counsel; or (4) 
plea for law enforcement. Felder v. State, 848 S.W.2d 85, 94-95 (Tex. 
Crim. App. 1992), cert. denied, 510 U.S. 829 (1993); Alejandro v. 
State, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973). If a jury argument 
exceeds the bounds of proper argument, the trial court’s erroneous overruling 
of a defendant’s objection is not reversible error unless it affected the 
appellant’s substantial rights. Tex. R. 
App. P. 44.2(b); Martinez v. State, 17 S.W.3d 677, 692-93 (Tex. 
Crim. App. 2000); Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 
1998) (op. on reh’g), cert. denied, 526 U.S. 1070 (1999). In 
determining whether the appellant’s substantial rights were affected, we 
consider (1) the severity of the misconduct (i.e., the prejudicial effect of the 
prosecutor’s remarks), (2) curative measures, and (3) the certainty of 
conviction absent the misconduct. Martinez, 17 S.W.3d at 692-93; Mosley, 
983 S.W.2d at 259.
        The 
State argues that the prosecutor’s first comment was a reasonable deduction 
from the evidence and was also a matter of “common knowledge.” The State’s 
“reasonable deduction” argument is based on the testimony of Officer Savoy. 
During his testimony, Officer Savoy stated, “I remember personally that the 
store had been robbed about a week or two before. And also after interviewing 
the complainant, the witness [sic] who both worked there, I was advised that it 
had been robbed about two weeks prior.” Thus, the State argues that the first 
remark was a reasonable deduction because it may have been Tuan and Kim who told 
Officer Savoy that the restaurant had been robbed two weeks earlier.
        Officer 
Savoy never testified, however, that he received this information from Tuan or 
Kim. It is just as likely that Officer Savoy received the information about the 
previous robbery from some other source. The State’s argument that Tuan, Kim, 
and Moran would have discussed the previous robbery because they were all 
teenagers working at the same restaurant is simply speculation.
        The 
State also argues that the remark constituted “common knowledge” since 
Moran, the victim in the first incident, and Tuan and Kim were all teenagers. 
According to the State, “teenagers would definitely discuss how their place of 
employment had been robbed and . . . such places of employment would wish to 
encourage their employees to be aware of potential dangers that had already 
occurred at such places of employment.”
        The 
concept of “common knowledge” as applied to jury arguments, however, goes to 
matters that are generally known to society at large. See, e.g., Milo v. 
State, 214 S.W.2d 618, 618-19 (Tex. Crim. App. 1948) (holding that 
prosecutor’s argument that district attorney is representative of State of 
Texas and of society is common knowledge); Rodriguez v. State, 90 S.W.3d 
340, 364 (Tex. App.—El Paso 2001, pet. ref’d) (holding that State’s 
suggestion that $500,000 is more money than most people have is matter of common 
knowledge); Perry v. State, 977 S.W.2d 847, 850 (Tex. App.—Houston 
[14th Dist.] 1998, no pet.) (holding that State’s argument that burden of 
proof beyond a reasonable doubt is not insurmountable, as indicated by all of 
the incarcerated people who have previously been convicted by proof beyond a 
reasonable doubt, is common knowledge); Torres v. State, 754 S.W.2d 397, 
401 (Tex. App.—Corpus Christi 1988, pet. ref’d) (holding that prosecutor’s 
argument that people die from cocaine is common knowledge). Consequently, we 
cannot agree with the State’s contention that information about the prior 
robbery was common knowledge.
        However, 
even if these comments to the jury were erroneous, we hold that they constituted 
harmless error. Both comments went only to the requirement for a robbery 
conviction that the defendant “intentionally or knowingly threaten[] or 
place[] another in fear of imminent bodily injury.” Tex. Penal Code Ann. § 29.02(a)(2). 
Other testimony and evidence strongly supported this element. Tuan testified 
that he thought that Goessler might have a gun or a knife, that he was scared, 
and that he feared that he could have been injured or threatened with death. 
Officer Fineman testified that when he arrived at the scene that night, Tuan and 
Kim were “[a]gitated, visibly shaken. They appeared excited and shaken. They 
were obviously very distraught as if they’d been through a frightening 
experience.” Given this, as well as Goessler’s conduct in ordering Tuan to 
“sack up the money” and in running to the front door and shaking it 
repeatedly, the evidence demonstrates that Goessler intentionally or knowingly 
threatened Tuan or placed him in fear of imminent bodily injury or death. 
Furthermore, Tuan identified Goessler, both that night at the restaurant and in 
court, as the robber; Goessler was picked up by the police near the restaurant 
that same night; and the description of the robber by Tuan and Kim matched 
Goessler.
        There 
were no curative instructions from the trial court. However, given the abundance 
of evidence against Goessler and the minimal severity of the prosecutor’s 
remarks, we hold that any error in the trial court’s overruling of 
Goessler’s objections did not affect his substantial rights; thus, any such 
error was harmless. See Tex. R. 
App. P. 44.2(b); see, e.g., Brantley v. State, 48 S.W.3d 318, 331 
(Tex. App.—Waco 2001, pet. ref’d) (holding that prosecutor’s comments 
amounted to harmless error where trial court overruled defendant’s objection, 
but severity of misconduct was relatively small, and certainty of defendant’s 
conviction absent prosecutor's misconduct was strong). We overrule Goessler’s 
third and fourth points.
V. Lesser 
Included Offense
        In 
his fifth point, Goessler claims that the trial court erred when it refused his 
request that the lesser included offense of attempted theft be included in the 
court’s charge.
        To 
determine whether a jury must be charged on a lesser included offense, we apply 
a two-step analysis. Moore v. State, 969 S.W.2d 4, 8 (Tex. Crim. App. 
1998). The first step is to decide whether the offense is a “lesser included 
offense” as defined in article 37.09 of the code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 37.09 
(Vernon 1981); Moore, 969 S.W.2d at 8. According to article 37.09 of the 
Texas Code of Criminal Procedure, “[a]n offense is a lesser included offense 
if . . . it consists of an attempt to commit the offense charged or an otherwise 
included offense.” Tex. Code Crim. 
Proc. Ann. art. 37.09(4).
        As 
noted earlier, a person commits aggravated robbery if he commits robbery as 
defined in section 29.02 of the penal code and he uses or exhibits a deadly 
weapon. Tex. Penal Code Ann. § 
29.03. A person commits robbery “if, in the course of committing theft as 
defined in Chapter 31 and with intent to obtain or maintain control of the 
property, he . . . intentionally or knowingly threatens or places another in 
fear of imminent bodily injury or death.” Id. § 29.02. The phrase 
“in the course of committing theft” includes conduct that occurs in an 
attempt to commit theft. Id. § 29.01(1). Thus, because robbery and 
aggravated robbery both include “in the course of committing theft,” 
attempted theft is a lesser included offense of both robbery and aggravated 
robbery. Cf. Teague v. State, 628 S.W.2d 240, 243 (Tex. App.—Fort Worth 
1982, no pet.) (proof of robbery requires proof of theft or attempted theft).
        The 
second step requires an evaluation of the evidence to determine whether there is 
some evidence that would permit a rational jury to find that the defendant is 
guilty only of the lesser offense, and not of the greater. Feldman v. State, 
71 S.W.3d 738, 750 (Tex. Crim. App. 2002); Moore, 969 S.W.2d at 8. The 
evidence must be evaluated in the context of the entire record. Moore, 
969 S.W.2d at 8. There must be some evidence from which a rational jury could 
acquit the defendant on the greater offense while convicting him of the lesser 
included offense. Id. The court may not consider whether the evidence is 
credible, controverted, or in conflict with other evidence. Id. If there 
is evidence from any source that negates or refutes the element establishing the 
greater offense, or if the evidence is so weak that it is subject to more than 
one reasonable inference regarding the aggravating element, the jury should be 
charged on the lesser included offense. Schweinle v. State, 915 S.W.2d 
17, 19 (Tex. Crim. App. 1996); Saunders v. State, 840 S.W.2d 390, 391-92 
(Tex. Crim. App. 1992).
        As 
to the aggravated robbery conviction, Goessler claims that he was entitled to a 
jury instruction on attempted theft because Moran lied as to whether a knife was 
used in the June 29, 2002 robbery. However, as discussed above, the evidence 
does not show that Moran lied about the knife. Furthermore, the evidence 
indicates that a robbery, including a completed theft, took place. In addition 
to Moran’s testimony, the surveillance videotape shows the robber hitting the 
top of the register with an object in his right hand. Moran then takes a bag 
from beneath the counter, opens the register, places the contents of the 
register into the bag, removes the drawer from the register, and hands the man 
the bag containing the contents of the register. The man then exits the 
business. Thus, there is no evidence that would permit a rational jury to find 
that Goessler is guilty only of attempted theft and not robbery or aggravated 
robbery. Cf. Eldred v. State, 578 S.W.2d 721, 723 (Tex. Crim. App. [Panel 
Op.] 1979) (holding that before instruction on theft as lesser included offense 
of aggravated robbery is required, record must contain evidence showing that if 
defendant is guilty, he is guilty of theft only).
        As 
to the robbery conviction, Goessler argues that no property was obtained and no 
weapon was displayed or used. However, as discussed above, a robbery conviction 
requires neither of these. Thus, Goessler has not adequately explained why he 
was entitled to an instruction on attempted theft. See Tex. R. App. P. 38.1(h) (requiring brief 
to contain clear and concise argument for contentions made, with appropriate 
citations to authorities and to record); cf. Watts v. State, 516 S.W.2d 
414, 414-15 (Tex. Crim. App. 1974) (holding that, in prosecution for aggravated 
robbery, trial court’s failure to instruct on attempted aggravated robbery was 
not error where defendant had demanded money at gunpoint but no money was taken, 
since actual success of obtaining property sought is not element of offense of 
aggravated robbery). We overrule Goessler’s fifth point.
VI. Conclusion
        Having 
overruled each of Goessler’s points, we affirm the trial court’s judgments.
  
  
                                                          PER 
CURIAM
 
 
PANEL 
F:    WALKER, J.; CAYCE, C.J.; and MCCOY, J.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
August 19, 2004


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
Section 29.03 of the Texas Penal Code states, in relevant part, that a person 
commits aggravated robbery if he commits robbery as defined in section 29.02, 
and he uses or exhibits a deadly weapon.  Tex. Penal Code Ann. § 29.03(a)(2).
3.  
The robbery took place on June 29, 2002.  The register was found on the 
morning of the trial, October 28, 2003.