In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00113-CR


______________________________




JERALD DEAN SULLIVAN, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 33959-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 Early one morning in late December 2005, Robert Stovall and his son Jeremy were awakened
by their dogs barking at something outside their rural Gregg County residence. The Stovalls
discovered Jerald Dean Sullivan and another, unidentified individual moving the Stovalls' all terrain
vehicle (A.T.V.) from the bed of the Stovalls' pickup truck onto the bed of a black Dodge pickup
truck, which was under Sullivan's control. The Stovalls confronted the thieves with firearms,
Sullivan's associate fled, and Sullivan initially complied with instructions to exit the Dodge pickup. 
Almost immediately, however, Sullivan started to fight the Stovalls, during which altercation a shot
was fired--fortunately hitting no one--but also during which Jeremy was injured by two blows from
Sullivan--one using Jeremy's shotgun as a club, hurting Jeremy's shoulder, and the other blow
resulting in a chipped tooth.

 A jury found Sullivan guilty of aggravated robbery and assessed his punishment at
imprisonment for life. Sullivan appeals, raising three issues. We affirm because we hold (1) the
evidence is legally and factually sufficient to support the conviction, (2) Sullivan was not entitled
to a jury charge on the lesser-included offense of theft, and (3) Sullivan's sentence is not
disproportionate.




(1) The Evidence Is Legally and Factually Sufficient

 In one point of error, Sullivan challenges the legal and factual sufficiency of the evidence to
support his conviction for robbery, arguing that the evidence shows the theft had been completed
before the victim was injured and that the injury did not occur while Sullivan was in flight. 

 Because a challenge to the legal sufficiency of the evidence is a separate issue from a
challenge to the factual sufficiency of the evidence, requiring a different standard of review, the
issues should be briefed separately. The practice of briefing one or more points of error as part of
a single issue has been strongly, and repeatedly, discouraged by this and other courts of this State,
as such a practice "often results in the combined point of error being overruled as multifarious." 
Newby v. State, 169 S.W.3d 413, 414 (Tex. App.--Texarkana 2005, no pet.). In the interest of
resolving substantive issues, however, we will not overrule Sullivan's point of error as multifarious.

 In reviewing the legal sufficiency of the evidence, we view the relevant evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000). If the evidence is legally insufficient to support the conviction, we must reverse
the conviction and enter a judgment of acquittal. Jackson v. Virginia, 443 U.S. 307 (1979).

 In our review of the evidence for factual sufficiency, we view all the evidence in a neutral
light and determine whether the verdict is against the great weight and preponderance of the
evidence. Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). If the evidence is factually
insufficient to support the conviction, we must vacate the judgment of conviction and remand the
case for a new trial. Id.

 A person commits the offense of robbery if he or she, while in the course of committing theft,
and with intent to obtain or maintain control of the property, intentionally, knowingly, or recklessly
causes bodily injury to another. Tex. Penal Code Ann. § 29.02(a)(1) (Vernon 2003). That offense
becomes aggravated robbery, a first-degree felony, if the actor uses or exhibits a deadly weapon
during the commission of the robbery. Tex. Penal Code Ann. § 29.03(a)(2), (b) (Vernon 2003). 
Our Legislature has specifically defined "in the course of committing theft" to include "conduct that
occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or
commission of theft." Tex. Penal Code Ann. § 29.01(1) (Vernon 2003).

 Because the legal and factual sufficiency of the evidence is challenged, we review the
evidence in some detail.

 Robert Stovall lived on Lafamo Road in Gregg County with his son, Jeremy Stovall. In the
early morning hours of December 27, 2005, Robert and Jeremy awoke to hear their dogs barking in
the pen outside. Jeremy looked outside his bedroom window to see that a black Dodge truck had
pulled into the driveway and backed up to the tailgate of Robert's burgundy Ford F-150. Jeremy saw
a person rolling the A.T.V., which had been in the bed of Robert's truck, into the bed of the Dodge. 
By this time, Robert had picked up his single barrel .410 gauge shotgun, had gone to the front door
of the house, had looked outside, and had seen his A.T.V. being moved from his truck into the bed
of the thieves' pickup. Robert opened the front door and fired a warning shot into the woods in the
hope of scaring the thieves. Robert also shouted to his son that someone was stealing the A.T.V. 
Robert then went back inside the house to put on some clothes and called 9-1-1 before again exiting
the house to confront the thieves. Jeremy meanwhile had dressed, had grabbed his own single barrel
.410 gauge shotgun, and had exited the house to confront the thieves. 

 As Jeremy exited the house, the person who had been moving the A.T.V. fled. (1) But Jeremy
saw a second stranger, Sullivan, by the truck, and Sullivan was climbing into the driver's side of the
Dodge truck, which was on the opposite side of the truck from the entrance to the Stovalls' house. 
Jeremy pointed his shotgun through the open passenger's side window and ordered Sullivan to exit. 
Sullivan initially complied--after which Jeremy walked around the front of the truck to the driver's
side--but Sullivan did not obey Jeremy's further commands to remove his hands from his jacket and
lay on the ground. As Jeremy approached, Sullivan suddenly grabbed the extended barrel of
Jeremy's shotgun, which caused the gun to fire unexpectedly. Luckily, the shot hit no one. Sullivan
then wrestled the gun away from Jeremy and used the stock end of the gun as a club to strike Jeremy
once on the shoulder. Jeremy testified at trial that the blow caused him to "hurt quite a bit" for
nearly two weeks after the incident. 

 Meanwhile, Robert walked up behind Sullivan, as Sullivan hit Jeremy with the gun, and
began to wrestle with Sullivan. Sullivan was able to take Robert's gun also, thus being in control
of both guns at that point. Jeremy then re-entered the fray. Sullivan hit Jeremy again, chipping
Jeremy's tooth. Eventually, Robert and Jeremy forced Sullivan to drop the guns, gained physical
control over him, and held him down until the police arrived a minute or two later. 

 The police officers who arrived on the scene were Paul Hickey and Paul Penick of the
Longview Police Department. Hickey and Penick took Sullivan into custody. 

 The Stovalls identified Sullivan in open court as the person who was stealing the A.T.V. and
who assaulted them both. The Stovalls also testified that they had not given Sullivan permission to
take the A.T.V. Hickey and Penick identified Sullivan as the person they took into custody; Hickey
also testified Sullivan had tried to escape after being placed in handcuffs, but Hickey tackled
Sullivan before he could get away. Finally, both Hickey and Penick identified the Stovalls' shotguns
as deadly weapons capable of causing death or serious bodily injury, even if used as a club. Sullivan
sponsored no rebuttal evidence or testimony. 

 Viewing the evidence in the light most favorable to the jury's verdict, the State's evidence
satisfied each essential element of the charged crime. The record is clear that Sullivan assaulted both
Jeremy and Robert during the course of committing or attempting to commit a theft or in an effort
to flee from the scene. Sullivan used Jeremy's gun, which the officers identified as a deadly weapon,
to injure Jeremy. The evidence rationally supports the conclusion that the theft had not been fully
completed, as the Stovalls were able to interrupt the theft before Sullivan could escape the Stovalls'
property (which sat approximately 300 feet from the roadway) with the A.T.V. Accordingly, we
conclude the jury's verdict is supported by legally sufficient evidence.

 Similarly, we believe that, when looking at all the evidence in a neutral light, the jury could
have rationally concluded the State had met its burden of proving the essential elements of the crime
beyond a reasonable doubt. We find nothing about the jury's "guilty" verdict to be manifestly unjust,
nor is it contradicted by the great weight and preponderance of the evidence. Accordingly, the
evidence is factually sufficient to support Sullivan's conviction.

 We overrule Sullivan's challenge to the sufficiency of the evidence.

(2) Sullivan Was Not Entitled to a Jury Charge on the Lesser-Included Offense of Theft

 Sullivan also contends the trial court erred by refusing to submit a requested lesser-included
offense jury instruction on the offense of theft. During the charge conference, (2) Sullivan asked for
a jury instruction that would permit the jury to find him guilty of theft of property valued at more
than $1,500.00, but less than $20,000.00, (3) rather than aggravated robbery. The trial court overruled
Sullivan's request, commenting, 

The definition of "in the course of committing theft" means conduct that occurs in
an attempt to commit, during the commission or in immediate flight after the attempt
of the commission. It doesn't make any difference whether the theft was complete
or not. This is going to be immediate flight for sure.

 To determine whether a charge on a lesser-included offense should be given, we apply a
two-step test. Mathis v. State, 67 S.W.3d 918, 925 (Tex. Crim. App. 2002); see Aguilar v. State, 682
S.W.2d 556, 558 (Tex. Crim. App. 1985); Royster v. State, 622 S.W.2d 442, 444 (Tex. Crim. App.
[Panel Op.] 1981) (plurality opinion). The first step is to decide whether the offense is a lesser-included offense of the offense charged. See Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon
2006); Mathis, 67 S.W.3d at 925. The second step of the test requires us to evaluate the evidence
to determine whether there is some evidence that would permit a jury rationally to find that the
defendant is guilty only of the lesser offense. Mathis, 67 S.W.3d at 925; Wesbrook v. State, 29
S.W.3d 103, 113 (Tex. Crim. App. 2000); Moore v. State, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998). 
Further, the evidence must establish the lesser-included offense as a valid rational alternative to the
charged offense. Wesbrook, 29 S.W.3d at 113 (citing Arevalo v. State, 943 S.W.2d 887, 889 (Tex.
Crim. App. 1997)). "[I]t is not enough that the jury may disbelieve crucial evidence pertaining to
the greater offense; there must be some evidence directly germane to a lesser included offense for
the factfinder to consider before an instruction on a lesser included offense is warranted." Bignall
v. State, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994).

 Theft can be a lesser offense of aggravated robbery. Id. at 23. As we have noted, "in the
course of committing theft" includes "conduct that occurs in an attempt to commit, during the
commission, or in immediate flight after the attempt or commission of theft." Tex. Penal Code
Ann. § 29.01(1) (Vernon 2003). From the record before us, we cannot say there is any evidence that
Sullivan is guilty of only theft, because all the evidence indicates Sullivan's assault of Jeremy, using
the stock end of the .410 gauge shotgun, occurred while Sullivan was either committing the theft,
attempting that theft, or attempting to flee from the scene of the crime. There is no evidence in the
record that Sullivan had completed the theft, fled the scene of the crime, and thereafter returned to
commit a separate assault. All the evidence in the record leads to but a single conclusion: Sullivan
assaulted Jeremy with the gun "in the course of committing theft." Accordingly, the trial court
properly overruled Sullivan's requested jury instruction.

(3) Sullivan's Sentence Is Not Disproportionate

 Sullivan finally contends his sentence of imprisonment for life is disproportionate to his
crime, citing Solem v. Helm, 463 U.S. 277 (1983). (4) The State counters that this punishment was
within the range provided by the Legislature and is, therefore, acceptable. 

 Texas courts have traditionally held that, as long as the punishment assessed is within the
range prescribed by the Legislature in a valid statute, the punishment is not excessive, cruel, or
unusual. See, e.g., Jordan v. State, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973). Here, Grimes'
sentence falls within the applicable range of 180 days to two years. See Tex. Penal Code Ann.
§ 12.35 (Vernon 2003).

 That does not end the inquiry. A prohibition against grossly disproportionate punishment
survives under the Eighth Amendment to the United States Constitution apart from any consideration
of whether the punishment assessed is within the range established by the Legislature. U.S. Const.
amend. VIII; see Solem, 463 U.S. at 290; Harmelin v. Michigan, 501 U.S. 957 (1991) (Scalia, J.,
plurality op.); Dunn v. State, 997 S.W.2d 885, 892 (Tex. App.--Waco 1999, pet. ref'd); Jackson v.
State, 989 S.W.2d 842, 845 (Tex. App.--Texarkana 1999, no pet.); Lackey v. State, 881 S.W.2d 418,
420-21 (Tex. App.--Dallas 1994, pet. ref'd). 

 Solem had suggested, as a three-part test, that an appellate court consider: (1) the gravity of
the offense compared with the harshness of the penalty; (2) the sentences imposed for similar crimes
in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other
jurisdictions. See Solem, 463 U.S. at 292. Harmelin at least raised questions about the viability of
the Solem three-part test. In fact, it was subsequently held that proportionality survived Harmelin,
but that the Solem three-part test did not. See McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir.
1992); Dunn, 997 S.W.2d at 892; Lackey, 881 S.W.2d at 420-21. In light of Harmelin, the test has
been reformulated as an initial threshold comparison of the gravity of the offense with the severity
of the sentence, and then, only if that initial comparison created an inference that the sentence was
grossly disproportionate to the offense should there be a consideration of the other two Solem
factors--(1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same
crime in other jurisdictions. McGruder, 954 F.2d at 316; Mullins v. State, No. 06-06-00044-CR,
2006 Tex. App. LEXIS 10072, at *3 (Tex. App.--Texarkana Nov. 21, 2006, no pet. h.); Dunn, 997
S.W.2d at 892; Lackey, 881 S.W.2d at 420-21. 

 In this case, we cannot say the severity of the sentence is grossly disproportionate to the
gravity of the offense. First, Robert and Jeremy both testified that, once Sullivan took Robert's gun, 
he tried to aim and fire it at the Stovalls. Second, Robert suffered a torn ACL as a result of the
struggle with Sullivan--an injury requiring Robert to undergo surgery to repair the damage. Third,
Sullivan admitted to using drugs during the evening before trying to steal the A.T.V., and Hickey
testified that he thought Sullivan was still under the influence of methamphetamine at the time of
the arrest. Fourth, Sullivan's parole officer testified that Sullivan had been released from prison
approximately four months before committing the crime for which he was being tried. 

 Finally, and most persuasively, the State introduced evidence that Sullivan had been
previously charged and convicted of resisting arrest, burglaries of buildings, and felony theft. There
was additional evidence that Sullivan had another burglary charge, but that charge was dismissed
in exchange for Sullivan's guilty plea to another 1997 theft charge. (5) For one of the burglary
convictions, Sullivan had been sentenced to twenty years' imprisonment July 17, 1992, by the same
trial judge before whom the current trial was proceeding; yet before Sullivan had satisfied the
remainder of that sentence while on parole, he had committed several new felonies, including the
current aggravated robbery offense. In all, Sullivan stood convicted of six different crimes. 

 Given the specific facts regarding the severity of Robert's injuries as a result of being
assaulted, the testimony from both Stovalls that Sullivan tried to fire one of the guns at them, and
Sullivan's extensive criminal history including several new crimes committed while on parole, we
cannot say a life sentence is grossly disproportionate. Accordingly, we need not compare the
sentence assessed by the jury in the case with sentences imposed by juries in this or other
jurisdictions. We overrule Sullivan's final point of error.

 Finding no reversible error in the court below, we affirm the trial court's judgment.


 

 Josh R. Morriss, III

 Chief Justice


Date Submitted: January 24, 2007

Date Decided: January 25, 2007


Do Not Publish
1. There is no indication in the record before us that this person was ever identified or located.
2. See Tex. Code Crim. Proc. Ann. art. 36.15 (Vernon 2006) (requested special charges).
3. Such an offense is classified as a state-jail felony, which carries a lesser punishment than
aggravated robbery. See Tex. Penal Code Ann. § 31.03(a) (Vernon 2003), § 31.03(e)(4)(A)
(Vernon Supp. 2006).
4. Sullivan did not object to the sentence on the ground it was disproportionate to the crime,
or on any other ground, at the time it was imposed. His motion for new trial, however, contains a
contention that the sentence was disproportionate to the offense. A motion for new trial is an
appropriate way to preserve this type of claim for review. See Williamson v. State, 175 S.W.3d 522,
523-24 (Tex. App.--Texarkana 2005, no pet.); Delacruz v. State, 167 S.W.3d 904 (Tex.
App.--Texarkana 2005, no pet.).
5. As part of the plea agreement paperwork in connection with the 1997 crime, Sullivan made
a judicial admission that he committed the alleged burglary, but acknowledged the State would not
prosecute him for that crime in exchange for his guilty plea in a companion case.