

## IN THE
## TENTH COURT OF APPEALS

_____

### No. 10-12-00068-CR
### No. 10-12-00069-CR

**TIMOTHY WASHINGTON,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

_____

### From the 13th District Court
### Navarro County, Texas
### Trial Court Nos. 33701-CR and 33702-CR

_____

## MEMORANDUM OPINION

_____

A jury convicted Appellant Timothy James Washington of burglary of a habitation and possession of a controlled substance, cocaine, in an amount of less than one gram. For the burglary conviction, the trial court assessed Washington's punishment, enhanced by previous felony convictions, at fifty years' imprisonment. For the possession-of-a-controlled-substance conviction, the trial court assessed his punishment at twenty-four months' confinement in a state jail facility. This appeal

ensued. Because Washington asserts identical issues in these two appeals, we will decide them together.

## Relevant Background

Bazel Strange was driving to his son Edward Strange's house on the morning of May 12, 2011 when he met a pickup truck coming from that direction. As Bazel passed the truck, he noticed the driver scrunched down in the seat looking through the steering wheel and a tarp flapping over the truck bed covering something. Bazel went on to his son's house. No one was home when Bazel arrived, but the door was slightly open and the trim on the door by the latch was bent, indicating that someone had forced his way inside. When Bazel went inside the home, he noticed that a few things were thrown around the floor and that Edward's gun safe was missing. Bazel called 911 and then Edward. Bazel told Edward that his house had been broken into and also described to Edward the pickup truck that he had seen earlier.

When Edward, a teacher at Kerens High School, received the call from his father, he stepped outside the classroom and onto the porch of the building. As he did, he saw a pickup truck that matched the description of the one that his father described. There were two people in the cab of the truck and a blue tarp covering a large object in the truck bed. Edward retrieved his own vehicle and followed in the direction that the truck went. Edward also called the Navarro County Sheriff's Office, reported seeing the truck, and told them that he was following it toward Goodlow. As Edward drove, he saw a Kerens police officer not far behind him. Edward then saw the pickup parked in front of a house later identified as being Washington's home. Edward saw a man

later identified as Bobby Gorman sitting in the driver's seat and a man later identified as Washington walking away from the truck carrying a duffle bag.

Edward decided to allow the Kerens police officer to arrive on the scene before he did, so Edward passed Washington's home, turned around, and then parked his vehicle a short distance from the pickup. When the officers removed the tarp from over the truck bed, Edward recognized his gun safe, which he later confirmed by way of records reflecting the serial number. When Edward returned home, he also noticed that his PlayStation game console was missing from his living room. The sheriff's office later returned to him his PlayStation 3 game console (for which he also had the serial number), PlayStation 2 and 3 games, controllers for the game system, a .22 rifle, and several other things.

Navarro County Sheriff's Detective Hank Bailey responded to the scene in Goodlow. Only Gorman was being detained at that time. Gorman confessed to Detective Bailey at the scene that he had stolen some of the items in the truck. Detective Bailey thought that Gorman must have had some help to be able to get the gun safe into the truck, but Gorman did not admit that he had any help. Gorman and his truck were transported to the sheriff's office.

Gorman gave his first of four statements to Detective Bailey at about 1 p.m. that afternoon. Gorman explained that he had pried open the door to Edward's house and stolen several items. In the bedroom of the house, he found a large safe that he could not move by himself. Gorman left Edward's house and went to Washington's house to get him to help move the safe. Washington agreed and went back to Edward's house

with Gorman. The two men turned the safe on its side and slid it out the door on jackets and a piece of carpet until they were able to get it into the back of the truck. Gorman also stated that he had "done other burglaries in the area" and would help the officers locate the property he had stolen.

After talking to Detective Bailey and also learning that Edward and a Kerens police officer saw Washington initially walking away from the pickup when they first arrived where the pickup was, Navarro County Sheriff's Sergeant Clint Andrews went to Washington's house to locate Washington and to see if he had any involvement in the burglary. Washington said that he had no knowledge of a burglary and no knowledge of anything stolen on his property. Sergeant Andrews asked if he could look around the outside of Washington's house. Washington allowed him to do so. Sergeant Andrews then asked if he could look around the inside of Washington's house. Washington consented. Once inside, Washington showed Sergeant Andrews his bedroom. Once inside the bedroom, Sergeant Andrews saw, in plain view, marijuana seeds and stems, marijuana residue, and cocaine residue. At that point, Washington said that he was not going to let him search any further.

All the occupants of the home were detained while Sergeant Andrews left and procured a search warrant for Washington's residence. After returning to Washington's residence with the search warrant, Sergeant Andrews found evidence from the burglary, including Edward's PlayStation game console and games, inside a bag in Washington's bedroom closet. Washington was arrested, and he gave a written statement to Sergeant Andrews later that day, which stated in part: "The cigarette

package with the cocaine residue in it belongs to me and no one else in the residence. I claim full responsibility for the narcotics located inside my residence."

## Lesser Included Offense Charge

In his first issue, Washington contends that the trial court's denial of his requested lesser-included-offense charge on theft constituted harmful error that requires reversal.

We use a two-step analysis to determine whether an appellant was entitled to a lesser-included-offense instruction. *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993). First, the lesser offense must be a lesser-included offense of the charged offense as defined by article 37.09 of the Code of Criminal Procedure. *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998); *see* TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006). Second, there must be some evidence in the record that would permit a jury to rationally find that if the appellant is guilty, he is guilty only of the lesser offense. *Hall*, 225 S.W.3d at 536; *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 672-73. The evidence must be evaluated in the context of the entire record. *Moore*, 969 S.W.2d at 8. There must be some evidence from which a rational jury could acquit the appellant of the greater offense while convicting him of the lesser-included offense. *Id.* The court may not consider whether the evidence is credible, controverted, or whether it conflicts with other evidence. *Id.* Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge. *Hall*, 225 S.W.3d at 536.

Washington argues that the first prong of the two-part test is met as a matter of

law because all of the elements of misdemeanor theft under Penal Code section 31.03 are implicit in felony burglary under Penal Code section 30.02. Washington further claims that the second prong of the two-part test is met because there is evidence in the record that: "1) Gorman explicitly denied that [Washington] had any complicity in the burglary; and 2) the police did find some of the stolen goods in [Washington's] home; and 3) the owner of the property testified that the goods identified as coming from [Washington's] home had a value of around $1000." The State responds, however, that although the offense of theft can be a lesser-included offense of burglary, *see Phillips v. State*, 178 S.W.3d 78, 82 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd), Washington has failed to meet the second prong of the test which requires evidence showing that he was guilty only of theft. The State argues that if the jury believed the evidence that Washington points to, then it would have found Washington not guilty of any crime rather than guilty only of theft. We agree with the State.

A person commits the offense of theft if he unlawfully appropriates property with intent to deprive the owner of property. TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2012). The person unlawfully appropriates property if it is without the owner's effective consent or the property is stolen and the actor appropriates the property *knowing* it was stolen by another. *Id.* § 31.03(b)(1), (2).

Gorman's third statement, which Washington introduced into evidence, declared that Gorman alone burglarized Edward Strange's property and that Washington was not present, did not participate, and had *no knowledge* of the burglary. Gorman further wrote in the statement that he sold Washington a PlayStation 3 game system that was

taken from Edward Strange's house *without Washington knowing* it was a stolen item from the burglary. Similarly, the State called Navarro County Sheriff's Sergeant Clint Andrews, who testified that Washington told him that he had *no knowledge* of a burglary and that he had *no knowledge* of any stolen items on his property.

If a defendant either presents evidence that he committed no offense or presents no evidence, and there is no evidence otherwise showing that he is guilty only of a lesser-included offense, then a charge on a lesser-included offense is not required. *Bignall v. State,* 887 S.W.2d 21, 25 (Tex. Crim. App. 1994). Here, the evidence Washington relied upon to support his requested lesser-included-offense charge supported only an acquittal, not a conviction for the lesser-included offense of theft. *See Lofton v. State*, 45 S.W.3d 649, 652 (Tex. Crim. App. 2001) ("A defendant's own testimony that he committed no offense, or testimony that otherwise shows that no offense occurred at all, is not adequate to raise the issue of a lesser-included offense."); *see also Pollard v. State*, 392 S.W.3d 785, 803 (Tex. App.—Waco 2012, pet. ref'd). Further, there is no evidence from any other source from which a rational jury could find that if Washington was guilty, he was guilty only of theft.

Because no evidence exists in the record that would permit a rational jury to find that Washington is guilty only of theft, we cannot say that the trial court erred in denying Washington's request for a charge on the lesser-included offense of theft. *See Hall*, 225 S.W.3d at 536; *Salinas*, 163 S.W.3d at 741; *Rousseau*, 855 S.W.2d at 672-73. We overrule Washington's first issue.

**Rule 404(b) Notice**

In his third issue, Washington contends that the State violated his right to a fair trial by introducing, without the required notice, evidence that is governed by Rule 404(b). Rule 404(b) states:

> **Other Crimes, Wrongs or Acts.** Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

TEX. R. EVID. 404(b). Several months prior to trial, Washington's counsel filed a Rule 404(b) notice request, asking for "notice, at least five days prior to the commencement of trial, by the State of its intent to introduce evidence in its case in chief of any other crimes, wrongs, or acts allegedly committed by Defendant, other than those alleged in the Indictment or Information in this cause."

During his opening statement to the jury, the prosecutor explained Gorman's several statements as follows:

> Gorman on May the 12th, gives his first written statement to Detective Bailey. In his first written statement he states that Washington helped in the burglary. He helped him get the safe and describes some of the stolen items later found in the defendant's closet at Mr. Washington's home.

> The next day Mr. Gorman gives a second statement which goes into more detail about what Mr. Washington was wearing that day, and that he pulled his sleeves up to cover his hands so he wouldn't leave fingerprints. Later Gorman comes to court, pleads guilty and is sentenced to 15 years in prison in the Texas Department of Criminal Justice. Before he leaves the Navarro County Jail to go to prison he writes out a

handwritten statement, statement number three that states Washington didn't have anything to do with the burglary[;] I just sold him that stuff that was in his house that day.

Now these, the first two statements are obviously in conflict with the third statement. Gorman was brought back from prison yesterday and Detective Bailey interviewed him again. So this is statement number four. In statement number four, Mr. Gorman says the first two statements are the truth. The third statement was made because of the threats he received from the defendant Washington against himself and his family. And Mr. Gorman didn't think he could protect his family while he was in prison. And Mr. Gorman's family still lives in the Kerens, Texas area.

Once the prosecutor concluded his opening statement, defense counsel informed the trial court that she needed to make a motion outside of the jury's presence. The following exchange then took place outside the jury's presence:

[Defense Counsel]: Okay. Judge, based on the statement made by [Prosecutor], he's indicated that Mr. Gorman made a statement saying that . . . the reason he had made the third statement was because of threats made to him. That's the first I've heard of that, Judge. I was never informed of that prior to today, that there were any threats made against him. If there were threats made against him we should have been told. And as to a fourth statement made to Mr. Bailey obviously recently that's the first I've heard of that too. I didn't even know there was even a statement made to him obviously just recently when he came back to the jail, which would obviously answer the question why he refused to talk to me also.

THE COURT: Okay. It seems like I heard from opening statement that the statement was given yesterday; is that correct?

[Prosecutor]: It is, your Honor. Well, there's four statements. There are two written statements that were given by Mr. Gorman at or near the time of the offense.

[Defense Counsel]: We do have both of those, Judge.

[Prosecutor]: Okay. And there's a third written statement that was given by Mr. Gorman after he entered his plea of guilty but before he was transferred to the TDC unit.

[Defense Counsel]: [Prosecutor] provided that.

[Prosecutor]: That was provided under Brady.

[Defense Counsel]: Yes, it was.

[Prosecutor]: Yesterday Mr. Gorman was transferred back to Navarro County pursuant to a bench warrant requested by the State. He was interviewed by Detective Bailey. He told Detective Bailey, and I was present for the interview, that he gave the third statement under duress because he had received threats against himself and his family from the defendant and that he has received further threats since he's been back in Navarro County not directly, but indirectly on behalf of the defendant against himself and his family.

THE COURT: Okay.

[Prosecutor]: I am not sure I understand what the objection is. I mean, I don't know not [sic] what it is that [Defense Counsel] wants. Even if he gave those statements three weeks ago, I don't know that the defense is entitled to a preview of what the State's witnesses['] testimony will be.

[Defense Counsel]: We're arguing under Brady that they should have been produced. At the very least we should have known he was making the allegation that my client was threatening him or that he had signed a statement under duress.

[Prosecutor]: How is that Brady?

THE COURT: Well, I don't believe it's Brady. Do you have a copy of the statement?

[Prosecutor]: The statement taken yesterday, your Honor?

THE COURT: Yes.

[Prosecutor]: I have it on audio disk. It wasn't written. It was recorded and he was told it was being recorded. He was [M]irandized but it was just, functionally it was easier to just turn on the recorder than it was to try to type everything out.

[Defense Counsel]: And are you intending on producing that?

[Prosecutor]:  Yes.

[Defense Counsel]:  We weren't even provided with that.

[Prosecutor]:  This was at 6:00 last night, your Honor.

THE COURT:  Okay.  I'll tell you what, at a break if you can make a copy of it for her to review and/or play.

[Prosecutor]:  Your Honor, I don't think she's entitled to a copy of it.

THE COURT:  Well, I'm talking when, after -- when is he going to testify?

[Prosecutor]:  It won't be at least until after lunch.  Now after he testifies then --

THE COURT:  Yeah.

[Prosecutor]:  -- certainly she will be entitled to a prior statement.  But it's not Brady.  He didn't say, certainly didn't say anything that's exculpatory to visa, via, the defendant.  And regardless of the timing I don't think that the defense is entitled to a preview of what every state's witness is going to say.  I don't think we were obliged to give the defense the two written statements we did give.

THE COURT:  I guess that's where I was, you gave the defense the first three, I understand you're not obligated unless the witness -- so whenever he has testified, if he does testify, if you can have a copy of it available.

The next day, Gorman testified, and then the State called Navarro County Sheriff's Detective Hank Bailey to authenticate the audio recording of Gorman's fourth statement.  But before Detective Bailey began testifying, the following exchange took place during a bench conference:

[Defense Counsel]:  Is this on the testimony regarding the tape?

[Prosecutor]: Actually, this is the video. We are going to get to the tape.

[Defense Counsel]: I want to keep a running objection from the original objections from --

THE COURT: Okay.

[Defense Counsel]: -- the opening, sorry, that I stated at that time --

THE COURT: Okay.

[Defense Counsel]: -- regarding the information on the audio.

THE COURT: It will be noted for the record.

[Prosecutor]: Thank you, Judge.

[Defense Counsel]: Thank you, Judge.

[Prosecutor]: I am lost. What information was that?

[Defense Counsel]: Okay. Not having had the information prior to today's testimony.

[Prosecutor]: Oh. You mean the Monday night statement?

[Defense Counsel]: Right.

[Prosecutor]: Okay.

[Defense Counsel]: Thank you.

Thereafter, Detective Bailey authenticated the audio recording, and it was admitted into evidence. Detective Bailey then testified:

Q.    And what was Mr. Gorman's explanation for those inconsistencies the Monday evening?

A.    During the interview that I conducted on Monday evening, he said that he gave this statement for his own well-being and his family's protection.

Q. Okay. Did he say that he had received threats before he gave that statement?

A. Yes. He had been threatened while he was there in jail, and he felt his family's health and well-being were in danger.

Q. Okay. And did he indicate whether he had received further threats since he's been brought back to Navarro County from the Texas Department of Criminal Justice?

A. Yes, he –

[Defense Counsel]: Judge, I am going to have to object at this point. It's hearsay.

[Prosecutor]: I'm sorry.

[Defense Counsel]: Hearsay.

[Prosecutor]: It's on the recording, your Honor.

[Defense Counsel]: Okay. Well –

THE COURT: Let's – I will sustain. It's been admitted. It's going to be published.

[Defense Counsel]: Exactly.

THE COURT: Let's proceed.

The audio recording was then played for the jury without further objection. On the recording, Gorman told Detective Bailey he only made the third statement because he was housed with "one of [Washington's] people," and he was being threatened.

The State initially argues that Washington has failed to preserve his third issue for review. To preserve a complaint for appellate review, the record must show that the appellant made the complaint to the trial court by a timely request, objection, or motion

that stated the grounds for the ruling that the appellant sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. TEX. R. APP. P. 33.1(a)(1)(A). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a)(2). The complaint raised on appeal must comport with the specific objection made at trial, or it is not preserved. *Duran v. State*, 163 S.W.3d 253, 256 (Tex. App.—Fort Worth 2005, no pet.).

Here, Washington's initial objection to Gorman's fourth statement and his claims that Washington's threats caused him to make his third statement was that Gorman's fourth statement should have been produced under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Washington did not complain that he had not been given proper notice under Rule 404(b). The next day, before Detective Bailey began testifying about Gorman's fourth statement, Washington expressed his desire for a running objection of the "original objections," which the trial court said would be noted. Again, Washington never complained that he had not been given proper notice under Rule 404(b). Then, when Detective Bailey testified directly about the threats Gorman told him he had allegedly received, Washington's only objection was a hearsay objection and not that the State had failed to give him proper notice of the alleged extraneous offense under Rule 404(b). Finally, when the audio recording was played for the jury, Washington made no further objection.

Because Washington did not make the complaint in his third issue to the trial

court, he has failed to preserve it for review.  We overrule Washington's third issue.

**Right to Confrontation**

In his fourth issue, Washington contends that his right to confront the witnesses against him was compromised because he could not cross-examine the unidentified witness whom Gorman claimed conveyed the threat to him.  But again, Washington failed to preserve this issue for appellate review because he did not object on such grounds in the trial court.  *See* TEX. R. APP. P. 33.1(a)(1)(A); *see Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004) (overruling appellant's constitutional confrontation clause issues because he did not preserve issues related to Confrontation Clause at trial).  A general hearsay objection does not preserve an issue on confrontation clause grounds.  *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005).  Furthermore, Washington's general hearsay objection was sustained, and to preserve a complaint for review, a defendant must receive an adverse ruling on his objection.  *Ramirez v. State*, 815 S.W.2d 636, 643 (Tex. Crim. App. 1991).  We thus overrule Washington's fourth issue.

**Admission of Search Warrant**

In his fifth issue, Washington contends that the trial court's admission into evidence of the search warrant was harmful error.  More specifically, Washington complains that the search warrant contained material about his drug-related past that was "non-probative and altogether prejudicial" regarding the possession charge.

Assuming without deciding that the trial court erroneously admitted the search warrant, the error is non-constitutional and will be disregarded unless it affected

Washington's substantial rights. *See* TEX. R. APP. P. 44.2(b); *Russell v. State*, 155 S.W.3d 176, 181 (Tex. Crim. App. 2005) (violation of evidentiary rule is non-constitutional error). Substantial rights are not affected by the erroneous admission of evidence if, after examining the record as a whole, we have fair assurance that the error did not influence the jury, or had but a slight effect. *Motilla v. State,* 78 S.W.3d 352, 356 (Tex. Crim. App. 2002). In conducting a harm analysis under Rule 44.2(b), we decide "whether the error had a substantial or injurious effect on the jury verdict." *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). We "consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the error and how it might be considered in connection with other evidence in the case[,] . . . the jury instruction given by the trial judge, the State's theory and any defensive theories, closing arguments, and voir dire if material to appellant's claim." *Id.* We also consider overwhelming evidence of guilt, but that is only one factor in our harm analysis. *Motilla,* 78 S.W.3d at 356-58.

Before the admission of the search warrant in this case, Gorman testified that he initially went over to Washington's house to "purchase some crack." Sergeant Andrews then testified that during the search of Washington's home, Washington showed Sergeant Andrews his personal bedroom where Sergeant Andrews saw, in plain view, marijuana seeds and stems, marijuana residue, and cocaine residue. Sergeant Andrews also identified small plastic baggies that are commonly used to distribute narcotics that were found in Washington's bedroom. Finally, Sergeant Andrews identified a written

statement that Washington gave to him, which stated in part: "The cigarette package with the cocaine residue in it belongs to me and no one else in the residence. I claim full responsibility for the narcotics located inside my residence."

Under these circumstances, we have a fair assurance that even assuming the search warrant was erroneously admitted, it did not influence the jury or had but a slight effect regarding the possession charge. We overrule Washington's fifth issue.

## Enhancement Allegations

In his second issue, Washington contends that the State failed to properly prove the two prior convictions for enhancement purposes because the penitentiary packet had been "violated" and was therefore no longer self-authenticating.

To establish a defendant's prior conviction, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). No specific document or mode of proof is required to prove these two elements. *Id.* While evidence of a certified copy of a final judgment and sentence may be a preferred and convenient means, the State may prove both of these elements in a number of different ways, including (1) the defendant's admission or stipulation, (2) testimony by a person who was present when the person was convicted of the specified crime and can identify the defendant as that person, or (3) documentary proof (such as a judgment) that contains sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted. *Id.* at 921-22.

Before trial, the State filed a notice of intent to enhance punishment in

Washington's burglary of a habitation case from a second-degree felony to a first-degree felony. *See* TEX. PENAL CODE ANN. § 12.42(b) (West Supp. 2012), § 30.02(c)(2) (West 2011). The State alleged that Washington, before the date of the burglary offense, had previously been finally convicted of a felony offense, to-wit:

> On the 2nd day of July, 2008, Defendant was convicted of the felony offense of Possession of Controlled Substance, Penalty Group One, in an Amount Less than 4 Grams but Greater than One Gram, in the 13th District Court of Navarro County, cause number 31879;

> On the 2nd day of July, 2008, Defendant was convicted of the felony offense of Unlawful Possession of a Firearm by Felon in 13th District Court of Navarro County, cause number 31887.

The written judgment shows that the trial court made a finding of true on the enhancement allegations.[1]

To prove the existence of the prior convictions and Washington's identity as the person convicted, the State first introduced through Sergeant Andrews the booking sheet from Washington's May 12, 2011 arrest. Sergeant Andrews testified that the document showed a photograph of Washington and included his birthdate, driver's license number, social security number, DPS number, and FBI number. The State then introduced through Navarro County Sheriff's Detective Stan Farmer the booking sheet from Detective Farmer's arrest of Washington on January 17, 2008 for evading arrest in a vehicle, possession of a controlled substance over one gram and under four grams, and unlawful possession of a firearm by a felon. The booking sheet showed a photograph of Washington and included his birthdate, driver's license number, DPS

---

[1] The written judgment also indicates that Washington pleaded true to the enhancement allegations; however, we have been unable to locate where Washington made any pleading to the enhancement allegations.

number, and FBI number. Detective Farmer explained that the DPS number is generated when an individual is first charged with a crime and that the number follows the person throughout every case. The birthdate, driver's license number, DPS number, and FBI number from the January 17, 2008 booking sheet matched those from the May 12, 2011 booking sheet.

The State then introduced certified copies of criminal docket sheets in case numbers 31879 and 31887, in which the defendant is identified as "Timothy J. Washington." The State also introduced certified copies of Texas Department of Safety Supplemental Criminal History Reporting Forms for "Timothy James Washington." The birthdate and DPS number on the forms matched those from Washington's booking sheets. These documents showed that Washington was arrested on January 17, 2008, and identified his offenses as possession of a controlled substance, penalty group one, in an amount greater than one gram but less than four grams and unlawful possession of a firearm by a felon. The documents showed that Washington pleaded guilty to the offenses and was sentenced to six years' confinement for each offense on July 2, 2008.

Finally, the State introduced a pen packet containing a photograph of Timothy James Washington and copies of the July 2, 2008 judgments of conviction in the 13th District Court in Navarro County in case numbers 31879 and 31887 for possession of a controlled substance, penalty group one, in an amount greater than one gram but less than four grams and unlawful possession of a firearm by a felon, respectively. When the State offered the pen packet as a self-authenticating document, defense counsel replied, "It looks like it's been tampered with. I don't even know if it's the original.

How do you know that that paper wasn't included in there that wasn't in there originally?" The prosecutor explained:

> Your Honor, I will tell the Court that I undid the staples up here and restapled it because with it stapled the way it was, I was unable to verify these numbers across the top, the TRN number, the DPS number, and the FBI number. I wanted to do that before I offered it into evidence.

Defense counsel nevertheless stated, "That's going to be my objection." The trial court overruled the objection and admitted the pen packet into evidence.

Washington argues that the trial court erred in admitting the pen packet because it was no longer self-authenticating once it had been "tampered" with. We disagree. The trial court was free to believe the State's explanation for why the pen packet had been restapled and admit the otherwise self-authenticating document. But even if the trial court erroneously admitted the pen packet into evidence, such error was harmless because even without the pen packet, the evidence was sufficient for the trial court to find both the existence of the prior convictions and Washington's identity as the person convicted. *See Flowers*, 220 S.W.3d at 921-22. Washington argues in his brief that without the pen packet, "the State failed to fulfill its established duty to present properly authenticated judgments of the alleged prior convictions." But as stated above, a final written judgment is not required to prove a prior conviction. *Id.* Here, the testimony of Sergeant Andrews and Detective Farmer together with the booking sheets, certified copies of criminal docket sheets, and certified copies of Texas Department of Safety Supplemental Criminal History Reporting Forms are sufficient for a reasonable trier of fact to find the existence of the prior convictions beyond a

reasonable doubt.  We overrule Washington's second issue.

## Conclusion

Having overruled all of Washington's issues, we affirm the trial court's judgments.

REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed November 7, 2013
Do not publish
[CRPM]